## IN RE ESTATE OF NILS O. NILSON.
## S. O. TJOSVOLD ET AL., APPELLEES, V. IVER S. BYGLAND, EXECUTOR, ET AL., APPELLANTS.

### FILED JUNE 4, 1908.  No. 15,166.

1. **Charities: CHARITABLE USES: ENFORCEMENT.** The doctrine of charitable uses as administered by the courts of chancery of England exercising judicial powers only, independent of the statute of 43 Elizabeth and of the *cy pres* power under the kingly prerogative, has been transplanted to this state, but in its enforcement the courts can exercise judicial powers only. *St. James Orphan Asylum v. Shelby*, 60 Neb. 796.

2. ———: ———: **CONSTRUCTION.** Courts will view with favor donations by will for charitable purposes, and will endeavor to carry them into effect where the same can be done consistently with the rules of law. *St. James Orphan Asylum v. Shelby, supra.*

3. ———: **TESTAMENTARY TRUSTS: BENEFICIARIES.** Where the object of a testamentary trust is clearly charitable, and the property devised is certain and definite, and the trustee is clearly described and competent to take the devise and administer the trust, and the beneficiary is certain and definite as to the class, the bequest will not fail on account of the indefiniteness or uncertainty of the individuals who are the ultimate beneficiaries.

4. ———: ———: ———. An element of a charitable trust, as compared with a private one, is the indefiniteness and uncertainty of the ultimate beneficiaries. If the class of beneficiaries is described in general terms, the trust may be sustained and enforced, although the individual beneficiary is uncertain and his or her selection is expressly or impliedly left to the trustee.

5. ———: **TESTAMENTARY BEQUEST: CONSTRUCTION.** A bequest by a testator, who was a native of an island of the kingdom of Norway, to a church congregation or parish of the island, which body is by the laws of that kingdom capable of receiving such bequests and administering such charitable trusts, of a sum of money to be invested, and the income therefrom distributed annually "to worthy and needy servant girls and the widows and orphans of deceased sailors and fishermen who are not a public charge," and appointing three of the parish officers and their successors in office to carry out the provisions of the bequest, constitutes a charitable trust, and is sufficiently definite as to its objects, the trustee and the beneficiaries, so that it may be upheld.

6. ———: ———: ———. Provisions of the will set forth in the opinion construed, and *held* that it was the testator's intention that the income from the trust be distributed to those persons within the classes described who are inhabitants of the respective parishes to which the several bequests were made, and to authorize the designated trustees to select the individuals within the classes who are the ultimate beneficiaries.

APPEAL from the district court for Boone county: JAMES N. PAUL, JUDGE. *Reversed with directions.*

*J. J. Sullivan* and *J. A. Price,* for appellants.

*H. C. Vail* and *C. E. Spear, contra.*

*E. Wakeley, C. B. Keller* and *W. H. De France, amici curiæ.*

LETTON, J.

Nils O. Nilson, a resident of the county of Boone, on the 29th of December, 1904, made his last will, which was duly admitted to probate after his decease. At the time of his death he left neither widow nor children, and his only heirs at law were brothers and sisters and the children of deceased brothers and sisters. After the probate of the will and the appointment of an executor, his heirs at law filed a petition in the county court, praying that certain provisions of the will be declared illegal and of no effect, and that in respect to the property disposed of thereby that Nilson be declared to have died intestate and said property to have vested in his heirs, and asking that the executor pay the proceeds thus disposed of to them. The provisions of the will attacked are as follows:

"Sixth. Being a native of the Tjosvold, Karmoen, Kingdom of Norway, where fishing and sailing are the chief industries, and being acquainted with the social and industrial conditions of the poorer classes of Norway, my sympathies go out to industrious and deserving servant girls, and to widows and orphans of deceased fishermen and sailors. Desiring to relieve such servant girls and

widows and orphans, I give and bequeath to Akre church congregation (Akre Kirksógn) six thousand dollars, to be invested and reinvested forever in first mortgages on farm lands at the highest obtainable rate of interest; the principal shall remain inviolate, and the interest shall be paid annually on the first day of December, and be distributed on the following Christmas to worthy and needy servant girls and the widows and orphans of deceased sailors and fishermen who are not a public charge. I appoint the pastor (Sognepresten), the president of the county commissioners (Forman Sabets Ordforer), and the County Treasurer (Komunens Kaserer) of Akre Kirksogn and their successors in office, as trustees to carry out the provisions of this bequest. This fund shall be known as the 'Nils Olai and Gunild Nilson Tjosvold Julefund.'

"Seventh. I also give and bequeath to Bruflads church congregation (Kirksogn) Sondre Etnadalen, Valders, Kingdom of Norway, the sum of five thousand dollars, to be invested and reinvested forever in first mortgages on farm lands at the highest obtainable rate of interest; the principal shall remain inviolate, and the interest shall be paid annually on the first day of December, and be distributed the following Christmas to worthy and needy servant girls and the widows and orphans of deceased peasants or undertenants who strive and use their best efforts to maintain themselves and families so as not to depend on charity, but who are from force of circumstances unable to do so. I appoint the church pastor (Sognepresten), the president of the county commissioners (Forman Sabets Ordforer), and the county treasurer (Komunens Kaserer) of Bruflads Kirksogn and their successors in office forever, as trustees to carry out the provisions of this bequest. This fund shall be known as the 'Nils Olai and Gunild Nilson Tjosvold Julefund.'

"Eighth. I give and bequeath two-thirds of all the residue of my estate to Akre Kirksogn to become a part of the fund mentioned in paragraph six, and the remaining one-

third to Bruflads Kirksogn to become a part of the fund mentioned in paragraph seven of this my last will and testament."

Answers were filed to the petition by the executor and by the Akre church congregation and the Bruflads church congregation. After a hearing the county court found that the provisions of the sixth, seventh and eighth clauses of the will were void and of no effect, and directed the executor not to pay the bequests to the congregations. A like judgment was rendered in the district court upon appeal, from which judgment the cause is brought to this court for review.

The contentions of the plaintiffs in the case are that the bequests contained in the sixth, seventh and eighth paragraphs of the will are indefinite and uncertain as to the beneficiaries and the objects of the testator's bounty; that such bequests are for the benefit of no defined class of persons, nor are the beneficiaries thereby confined to any particular locality; that the bequests are too indefinite and uncertain to be enforced, and are therefore void; that the trustees named in the will are not empowered by the testator to select the beneficiaries of such bequests and therefore that all of them must fail. We have been favored with able and painstaking briefs upon the questions involved, and with interesting oral arguments, not only by the attorneys for the respective parties to this proceeding, but by other learned and able counsel who are interested in a like question which may arise with reference to the will of John A. Creighton, in an action now pending in Douglas county. Much learning and dilligence has been displayed by counsel in the presentation of the law with reference to the doctrine of *cy pres,* and whether or not testamentary trusts for charitable uses were administered by courts of chancery in England, exercising judicial powers alone, prior to the enactment of the statute of 43 Elizabeth; it being maintained by the plaintiffs that the trusts sought to be created by the will in question are so indefinite as to beneficiaries that they

can only be upheld and administered by a court exercising the *cy pres* power, such as exercised by the courts of England under the statute of 43 Elizabeth and under the king's prerogative power, and not by virtue of judicial functions. In view of the decision of this court in the case of *St. James Orphan Asylum v. Shelby,* 60 Neb. 796, we deem it unnecessary to go into an extended review of a number of the questions discussed. We may therefore begin the consideration of this case, having it established by that opinion as the law of this state that the provisions of the statute of 43 Elizabeth for the administration of charitable trusts are not enforceable in this state, and that the doctrine of administering charitable trusts, *cy pres,* under the kingly prerogative is inapplicable. It is further settled by that case that the courts of this state have equal power in the administration of testamentary trusts for charitable uses as were possessed by the courts of England prior to and independent of the statutes of 43 Elizabeth, and that testamentary bequests for charitable purposes will be viewed with favor and will be carried into effect, if the same can be done consistent with established principles.

It appears from the record that in the kingdom of Norway there is a union of church and state, and that church congregations have from time immemorial constituted organizations or parishes somewhat of the nature of municipal corporations, having clearly defined territorial boundaries, and whose affairs are administered by officers selected or appointed in conformity with law, and possessing definite administrative powers. It further appears that bodies of this character, under the laws of Norway, have power and authority to accept such bequests as were made by Nilson, and to assume and administer trusts of the character mentioned in the will. The congregations interested have signified their acceptance of the bequest, and their consent to assume the trust imposed and to administer it through the officers named and their successors in office. It appears, then, that there is no room

for contention over the fact that a definite trustee exists, competent to accept the trust, and able to administer it. It is suggested in the brief of the appellees that the persons now occupying the offices, the respective and successive incumbents of which are designated as trustees to administer the provisions of the will, have no power to bind their successors, but this we think is of no importance. It is the congregation or parish to whom the bequest is made, and the administration only is committed to its officers. The trustee which takes and holds the bequest is a continuing body, and the administration of the trust is a duty which appertains to the respective offices and is to be performed by the incumbents thereof. It is a duty owing to the congregation, and not to the present holders of the office, who are *ex officio* administrators of the trust, and is one which the congregation has the power or right and the authority to compel the proper performance of.

The main question in the case is whether or not the beneficiaries designated in the will are certain and definite enough so that the trustees may administer the trust without further direction or ascertainment than that furnished by the language of the will itself; or, if it shall be found that the description of the ultimate beneficiaries in the will is not sufficiently definite so that the trust may be so administered, whether any discretion or power is vested in the trustees to select or ascertain from the members of the indefinite class described the individuals who should be the recipients of the testator's bounty.

It is one of the characteristic qualities of a charitable trust that the persons or individuals for whose particular benefit the gift is made are not and cannot be definitely ascertained or pointed out in the gift. "In order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number; that is, the persons to be benefited must be vague, uncertain, and indefinite, until they are selected or appointed to be the particular beneficiaries of the trust

for the time being." 2 Perry, Trusts (5th ed.), sec. 710. "It is said that vagueness is, in some respects, essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recipient begins." 2 Perry, Trusts (5th ed.), sec. 687. It is the very indefiniteness with regard to individual persons which brings it within the class of charitable gifts. 3 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1018; *Russell v. Allen,* 107 U. S. 163; *Sowers v. Cyrenius,* 39 Ohio St. 29, 48 Am. Rep. 418. For, if the individuals are named, it is a private, and not a public charity. Where the trustee is certain, the general rule as to beneficiaries may thus be stated: If the ultimate beneficiaries are members of a class or species of persons and the will itself points out such class or species with sufficient definiteness so that if the trustee refuses to act a court could enforce the trust, the designation of the beneficiary is sufficiently definite; or, if a power of selection of individuals from the members of a class is given by the will to the trustee, either expressly or by implication, the rule that that is certain which may be made certain applies, and the trust will not fail for want of a beneficiary. Conversely, unless the beneficiaries are pointed out in the will in a sufficiently definite manner as to class, or unless the trustee is given by the will, either expressly or impliedly, the power of selection as to individual recipients, the bequest is not sufficiently definite, and the estate will not pass. 2 Perry, Trusts (5th ed.), sec. 732. The cases bearing upon the general subject of charitable trusts are many, and the exact language of the bequests is different in almost every case. We cite the following as being most enlightening upon the point here to be decided. In the main they are from courts holding that neither the statute of Elizabeth nor the prerogative power of the king is the source of their authority over charitable trusts, which is the doctrine of this court.

A bequest to trustees of a sum to be devoted, "under such regulations as to the said trustees and overseers may

seem best, to the free education of such young men as may
desire to take advantage of the said endowment by way of
their preparation for entrance into the naval academy at
Annapolis, Maryland, or such as may fit them to become
mates or masters in the merchant marine service," and to
such apprentices "as  *  *  *  may apply for appoint-
ment from civil life in the steam engineering department
of the United States navy," was upheld as being a special
charitable trust, and it was further held that the trust
was not void for uncertainty or incapacity of execution
apparent on its face.  *Columbia University v. Taylor*, 25
App. D. C. 124.  In *Tincher v. Arnold*, 147 Fed. 665, the
bequest was in trust to create a fund to be used to estab-
lish and maintain a school "for the purpose of educating
boys who reside in the state of Illinois, between the ages
of 12 and 18 years, and who are unable to educate them-
selves."  The circuit court of appeals held, Judge San-
born writing the opinion, that the bequest was "not void
for want of a class of boys to which the charity may apply,
because of the existence in the state of a system of public
free schools open to all boys of such age without charge,
nor because of uncertainty as to the individual bene-
ficiaries."  In the same case it was urged that the bequest
was indefinite, for the reason that no power was granted
to the trustees to select the charitable donees.  The will
appointed the trustees "for the purpose of carrying out
the full terms" of the will, and directed that they manage
the estate.  But the court said: "We think the will in-
tends the trustees to manage the estate after the building
should be built; and that this objection is not well taken"
—citing *Guilfoil v. Arthur*, 158 Ill. 600.  The above con-
clusions are reached in these cases without reference to
the question whether the courts of Illinois would admin-
ister a charity under the *cy pres* doctrine.  As to another
point in the case, this question is considered, and it is
held that the modified *cy pres* doctrine would be followed
by the courts of that state, involving not what is known
as the prerogative power, but what has been termed the

judicial power of *cy pres,* and the *Crerar* will case, *Crerar v. Williams,* 145 Ill. 625, was cited as an example of the application of this doctrine.

A bequest of all of an estate to be "the basic endowment, founding, establishment, and maintenance of a home or homes for industrious girls and women, without respect to age or sect; the first to be established in the counties of Allegheny and Beaver. Others can be located elsewhere, as the fund shall grow adequately"—was held not too indefinite to be upheld in Pennsylvania. In that state the court is empowered by statute to prevent the failure of a trust by supplying a trustee. This statute was enacted in 1885, and Pennsylvania cases since that time have been based upon that statute, but the court say: "but even under the old rule the power to act at discretion in the administration of a charity need not have been expressly given, for it could be implied from the nature of the trust, *Pickering v. Shotwell,* 10 Pa. St. 23, and here there was a very large discretion implied in respect of the buildings and management of the Home." The court held, therefore, that the trust was sufficiently definite, and that discretion was conferred upon the trustee to administer. *Daly's Estate,* 208 Pa. St. 58. In *Eliot's Appeal,* 74 Conn. 586, a bequest of a sum which "I direct the wardens and vestry of the St. Paul's society to invest in such a manner as will best provide a home for ladies of advanced age, or infirm, who are or who may hereafter become connected with the said St. Paul's church society," was upheld. The court said: "This bequest to St. Paul's society is to be invested by its wardens and vestry 'in such a manner as will best provide a home' for those of the class specified who may need such relief. The power to decide as to the best means of applying the funds for this purpose is impliedly given to the society. It inheres in the trust. *Woodruff v. Marsh,* 63 Conn. 125; *Mack's Appeal,* 71 Conn. 122." *Coleman v. O'Leary's Executor,* 114 Ky. 388, 70 S. W. 1068, contains an inter-

55

esting historical review of the Kentucky decisions with
reference to the statute of Elizabeth and the *cy pres* pow-
ers, and of subsequent legislation in that state upon the
subject of charitable uses. The Kentucky courts first
gave full effect to all the *cy pres* powers of the English
courts, both judicial and prerogative. *Gass & Bonta v.
Wilhite,* 2 Dana (Ky.), *170, 26 Am. Dec. 446. But this
doctrine was limited by later opinions, beginning with
*Moore's Heirs v. Moore's Devisees & Executors,* 4 Dana
(Ky.), *354, 29 Am. Dec. 417, to the judicial powers pos-
sessed by the English courts independent of prerogative
or of the statute of Elizabeth. In 1852 another statute
was adopted. This statute was construed in *Cromie's
Heirs v. Louisville Orphans' Home Society,* 3 Bush (Ky.),
365, by Judge Robertson, who wrote the opinion in
*Moore's Heirs v. Moore's Devisees & Executors, supra.*
The court say, speaking of Judge Robertson: "He be-
lieved, and said so in the opinion, that the object of the
repeal of the British statute 'was to substitute a system
more congenial with our institutions, and by a legislative
endorsement of the doctrine suggested in *Moore's Heirs v.
Moore's Devisees & Executors* to eliminate the *cy pres*
doctrine of England." So that the law in Kentucky by
statute seems to be substantially that declared by this
court in the *Orphanage* case. The court continues: "The
court will, under the statute, settle who are the bene-
ficiaries of a trust, if one is created, but it must settle
them from the words of the gift; they must be judicially
ascertained. It is not doubted that the individual bene-
ficiaries of the bounty need not be named. That would
render the gift a mere private use, and subject to the rule
against perpetuities." It was held that a "bequest in
trust to the 'Bishop of the Catholic Diocese of Louisville
for the establishment of a home for poor Catholic men'"
was not void for being indefinite as to the location of the
home or the beneficiaries; the court holding, with some
hesitation, that a bequest being made to the bishop as an
officer of the church in his official capacity, having juris-

diction as such over charitable institutions of like charac-
ter within a defined territory, the court would presume
that the donor made the gift upon terms in harmony
with the purposes of kindred organizations in that ecclesi-
astical jurisdiction, and for the benefit of such similar
objects of charity as are provided for in that district.
See, also, *Thompson's Executor v. Brown*, 116 Ky. 102,
62 L. R. A. 398. In Arkansas a bequest to a pastor, to
be used by him "for the purpose of helping to establish a
school in said parish for the education of Catholic boys
and for helping to educate young men of the parish for
the priesthood," was upheld, the court saying: "A class
to be the object of the bounty is plainly designated, and
the selection of the individuals out of that class is left to
the discretion of the trustee." *McDonald v. Shaw*, 81
Ark. 235, 98 S. W. 952. This case is somewhat weakened
as authority in this state by the fact that it follows an
early Arkansas case, *Biscoe v. Thurcatt*, 74 Ark. 545, 86 S.
W. 432, which held that the statute of Elizabeth was in
force in that state. In *Clement v. Hyde*, 50 Vt. 716, 28
Am. Rep. 522, a bequest as follows: "I give the use, in-
terest, and income, after my decease, the sum of one thou-
sand dollars in cash to the treasurer of the county of
Orange and his successors in office; the income of said
one thousand dollars to be expended in the education of
the scholars of poor people in the county of Orange"—
was sustained, the court holding that there was a discre-
tion in the trustee to select the individuals, saying: "In
the case at bar the testator orders the trustee to apply
the income to the declared purpose. Its application im-
plies the exercise of discretion. * * * If the trustee had
applied the income arising from the trust fund in good
faith, and in the exercise of ordinary discretion in the
purchase of books, payment of tuition or board of any of
the class of scholars indicated, no one, we think, would
doubt about his accomplishing the intention of the testa-
tor." This is followed in *New Haven Young Men's In-
stitute v. City of New Haven*, 60 Conn. 32. In Iowa the

*cy pres* doctrine is expressly repudiated. In *Grant v. Saunders,* 121 Ia. 80, a bequest "to Barbary R. Fouche, in trust, the remainder of my estate whatever it may be, for the benefit of the poor, and to be given by her to such objects, as in her judgment is worthy of assistance, from time to time, and at such times and persons as she thinks best to help," was held to be sufficiently definite as to beneficiaries. The court held that to administer this charity it need not go to the extent of recognizing the *cy pres* doctrine. It said: "The trustee and the class are then definite and certain. All that remains to be done to administer the trust is the selection of the beneficiaries from the designated class, and the only uncertainty is as to who they shall be. The bequest could not well have been more specific as to the persons or objects of the testator's bounty without destroying its character as a charity, because uncertainty is one of the elements of a charitable gift. * * * And it is settled in this state that the trustee may legally select the beneficiaries." The court held, further, that "even if the trustee failed to act, her successor might select the objects of the testator's bounty, though the will does not expressly provide for the appointment of others by whom the objects are to be selected." This can only mean that the nature of the trust implies the power of selection in the trustee, whoever he may be, since no express right to select is given in the will to Barbary Fouche's successors. In *Hunt v. Edgerton,* 80 N. E. (Ohio St.) 1126, it is held that the individual beneficiaries of a charitable trust must necessarily be vague and uncertain; that it is sufficient if a class is designated from whom the trustees can select; and that such a trustee has, without special delegation thereof, incidental authority to select from the classes named or individual beneficiaries thereof.

We deem it unnecessary to enter upon an exhaustive statement of the history of judicial opinion of the courts of the several states and of the United States upon the

general subject. It may be said, however, that the result of the earlier cases, influenced, no doubt, by the great name of Marshall, in the case of *Baptist Ass'n v. Hart's Executors,* 4 Wheat. (U. S.) 1, tended to a stricter insistence upon definite beneficiaries, and to limit the powers of a court of chancery in the administration of charitable trusts, upon the assumption that all of the ancient powers of that court in that regard were derived by virtue of the kingly prerogative or by the statute of Elizabeth, but that the later decisions have recognized the existence of judicial powers exercised in the control and administration of such trusts by the court of chancery anterior to and independent of the statute of 43 Elizabeth, and not based upon prerogative. In this connection, in Wisconsin, compare *Ruth v. Oberbrunner,* 40 Wis. 238, and *Heiss v. Murphy,* 40 Wis. 276, with *Harrington v. Pier,* 105 Wis. 485; in Iowa, *Lepage v. McNamara,* 5 Ia. 124, with *Grant v. Saunders,* 121 Ia. 80; in the United States supreme court, *Baptist Ass'n v. Hart's Executors,* 4 Wheat. (U. S.) 1, with *Russell v. Allen,* 107 U. S. 163, and *Romney v. United States,* 136 U. S. 1; in Connecticut, *White v. Fisk,* 22 Conn. 31, with *Woodruff v. Marsh,* 63 Conn. 125; in Indiana, *Grimes' Exr's v. Harmon,* 35 Ind. 198, with *Board of Commissioners v. Dinwiddie,* 139 Ind. 128; in New York, *Wright v. Trustees,* 1 Hoff. Ch. (N. Y.) 201, an exhaustive opinion, *Williams v. Williams,* 8 N. Y. 526, with *Allen v. Stevens,* 161 N. Y. 122, which reviews the course of decisions and legislation on the subject in that state; and on the general subject see the exhaustive historical argument of Mr. Binney in the *Girard* will case, *Vidal v. Girard's Exr's,* 2 How. (U. S.) 126, which is a marvel of forensic skill and industrious research; also, 2 Perry, Trusts (5th ed.), sec. 694, and Underhill, Wills, sec. 817. We believe that the later expressions of the courts are more in conformity with sound reason, and more in consonance with the principles of charity and benevolence, which should be favored and upheld by the

courts whenever it can be done without violence to established principles, than the earlier decisions are.

Having reviewed these cases, let us examine the facts before us. Does the will itself point out with sufficient certainty the persons to be benefited? In determining this question we are not confined to the language of that paragraph of the will alone which bestows the charity, but, in endeavoring to ascertain and effect the intention of the testator, we are at liberty to examine the whole instrument, and, if from the whole will, the person or persons, class or classes, for whose benefit the bequest is made may be ascertained, the will is sufficiently definite and the trust may be administered according to the testator's intention. *St. James Orphan Asylum v. Shelby, supra; American Tract Society v. Atwater,* 30 Ohio St. 77, 27 Am. Rep. 422. We think it unnecessary to discuss whether the object is charitable. The language "to worthy and needy" persons of the class seems clear enough.

It appears from the will that Nilson had a sister living at Akre Haven, Karmoen, Stavanger, "Amt." Norway; that he was a native of the "Tjosvold, Karmoen"; and that one of the congregations to whom the bequests are made is the Akre congregation, Karmoen. Courts will take judicial notice of natural boundaries and of geographical conditions, as well as of the larger political divisions and subdivisions. Using this privilege, it appears that the word "Karmoen" means "of Karmo," that Karmo is an island off the western coast of Norway belonging to the Stavanger province or "Amt," and that Akre or Akre Haven is a village or hamlet situated on this island. It also appears that Valders, in which the Bruflads congregation is situated, is an inland district of Norway, and it was stated upon the argument that this parish was the former home of the testator's wife. We think it apparent from the fact of the testator's birthplace being upon the island of Karmo, "where fishing and sailing are the chief industries," and from the fact that the bequest was made to a congregation or parish situated

upon this rocky island, and from the fact that the bene-faction is to be distributed on Christmas day by the pastor and other local officers of the parish, that his bounty was intended for the "worthy and needy servant girls and the widows and orphans of deceased sailors and fishermen who are not a public charge" belonging to the parish of Akre and to the island of Karmo. As to the bequest to the inland parish of Bruflads, since it is to be distributed under the same conditions as the other trust, we are of the opinion that it was the testator's intention that the beneficiaries should be those individuals belonging to the classes mentioned in the bequest who belong to the Bruf-lads parish. We are aided to this conclusion by the con-sideration of the limited amount of money which the in-vestment of the sums bequeathed would in all probability produce when invested by the trustees. But, even though the beneficiaries are considered not to be limited to those of the classes mentioned who reside within the respective parishes, we do not think the trust too indefi-nite to be administered. It is clearly limited to persons of the classes named living in the kingdom of Norway. Like bequests have frequently been upheld by the courts, even though applying to classes or individuals to be selected from a much larger field than that of the king-dom of Norway.

We are also of the opinion that the designation of the respective officers whose duty it shall be "to carry out the provisions of this bequest" impliedly confers upon these officials the power to select from within the class the in-dividuals who shall receive the bounty. It was, no doubt, with reference to the peculiar opportunities for knowledge as to the condition of the poor servant girls and widows and orphans afforded to these officers by virtue of their church relations that the testator selected them to execute the trust. It was impossible for him to select the indi-viduals. He could only designate a class, and leave it to his trustees to select the individual beneficiaries of the charity, and no one seemed to him to be better fitted or to

possess better qualities than those who resided among the poor people whom he wished to help; and the pastoral relation of one of the trustees, and the selection to official positions of the others, at least implies the existence of the qualities necessary to make them faithful and competent administrators of the trust. We are convinced that the testator by the will clearly showed his intention to create a charity. He indicated its general nature and purpose, and described in general terms the class of beneficiaries whom he desired to profit by his bounty. The trustees to administer the bounty were clearly pointed out by the will, and they were empowered to carry the provisions of the instrument into effect.

In conclusion, we are of the opinion that the bequests to the two congregations and the officers designated as trustees to carry the provisions of the bequest into effect are sufficiently definite and certain as to the trustees, and that the provisions of the will as to the class of beneficiaries and as to the selection of the individuals who are to receive the charity are sufficiently definite, so that they are in all respects valid and enforceable.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter a decree in accordance with this opinion.

REVERSED.