# Richmond

Shenandoah Valley National Bank of Winchester, Executor, Etc. v. Harriet H. Taylor, and Others.

March 12, 1951.

Record No. 3737.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Harrison, Benham & Thoma, J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Assistant Attorney General,* for the appellants.

*Scully & Woltz, Bankhead T. Davies, J. Randolph Larrick, Duncan C. Gibb* and *Dabney W. Watts,* for the appellees.

MILLER, J., delivered the opinion of the court.

Charles B. Henry, a resident of Winchester, Virginia, died testate on the 23rd day of April, 1949. His will dated April 21, 1949, was duly admitted to probate and the Shenandoah Valley National Bank of Winchester, the designated executor and trustee, qualified thereunder.

Subject to two inconsequential provisions not material to this litigation, the testator's entire estate valued at $86,000, was left as follows:

"SECOND: All the rest, residue and remainder of my estate, real, personal, intangible and mixed, of whatsoever kind and wherever situate, * * * , I give, bequeath and devise to the Shenandoah Valley National Bank of Winchester, Virginia, in trust, to be known as the 'Charles B. Henry and Fannie Belle Henry Fund', for the following uses and purposes:

"(a) My Trustee shall invest and reinvest my trust estate, shall collect the income therefrom and shall pay the net income as follows:

"(1) On the last school day of each calendar year before Easter my Trustee shall divide the net income into as many equal parts as there are children in the first, second and third grades of the John Kerr School of the City of Winchester, and shall pay one of such equal parts to each child in such grades, to be used by such child in the furtherance of his or her obtainment of an education.

"(2) On the last school day of each calendar year before Christmas my trustee shall divide the net income into as many equal parts as there are children in the first, second and third grades of the John Kerr School of the City of Winchester, and shall pay one of such equal parts to each child in such grades, to be used by such child in the furtherance of his or her obtainment of an education."

By paragraphs (3) and (4) it is provided that the names of the children in the three grades shall be determined each year from the school records, and payment of the income to them "shall be as nearly equal in amounts as it is practicable" to arrange.

Paragraph (5) provides that if the John Kerr School is ever discontinued for any reason the payments shall be made to the children of the same grades of the school or schools that take its place, and the School Board of Winchester is to determine what school or schools are substituted for it.

Under clause "THIRD" the trustee is given authority, power, and discretion to retain or from time to time sell and invest and reinvest the estate, or any part thereof, as it shall deem to be to the best interest of the trust.

The John Kerr School is a public school used by the local school board for primary grades and had an enrollment of 458 boys and girls so there will be that number of pupils or thereabouts who would share in the distribution of the income.

The testator left no children or near relatives. Those who would be his heirs and distributees in case of intestacy were first cousins and others more remotely related. One of these next of kin filed a suit against the executor and trustee, and others challenging the validity of the provisions of the will which undertook to create a charitable trust.

Paragraph No. 10 of the bill alleges:

"That the aforesaid trust does not constitute a charitable trust and hence is invalid in that it violates the rule against the creation of perpetuities."

Other heirs and distributees appeared and joined in the cause and asked that the trust be declared void and the estate distributed among testator's next of kin.

The cause was heard upon the bill and a demurrer filed by the executor and trustee. The demurrer was overruled and the contention of the heirs and distributees sustained. From decrees that adjudicated the principles of the cause and held that the trust was not charitable but a private trust and thus violative of the rule against perpetuities and void, this appeal was awarded.

The sole question presented is: does the will create a valid charitable trust?

Construction of the challenged provisions is required and in this undertaking the testator's intent as disclosed by the words used in the will must be ascertained. If his dominant intent as expressed was charitable, the trust should be accorded efficacy and sustained.

But on the other hand, if the testator's intent as expressed is merely benevolent, though the disposition of his property be meritorious and evince traits of generosity, the trust must nevertheless be declared invalid because it violates the rule against perpetuities.

■ "A charitable trust is created only if the settlor properly manifests an intention to create a charitable trust." Restatement of the Law of Trusts, sec. 351, p. 1099.

Authoritative definitions of charitable trusts may be found in 4 Pomeroy's Equity Jurisprudence, 5th Ed., sec. 1020, and Restatement of the Law of Trusts, sec. 368, p. 1140. The latter gives a comprehensive classification definition. It is:

"Charitable purposes include:

"(a) the relief of poverty;

"(b) the advancement of education;

"(c) the advancement of religion;

"(d) the promotion of health;

"(e) governmental or municipal purposes; and

"(f) other purposes the accomplishment of which is beneficial to the community."

In the recent decision of *Allaun* v. *First, etc., Nat. Bank,* 190 Va. 104, 56 S. E. (2d) 83, the definition that appears in 3 M. J., Charitable Trust, sec. 2, p. 872, was approved and adopted. It reads:

" 'A charity', in a legal sense, may be described as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public building or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable. Generally speaking, any gift not inconsistent with existing laws which is promotive of science or tends to the education, enlightening, benefit or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience is a charity. It is essential that a charity be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity." (190 Va. p. 108.)

See also, *Collins* v. *Lyon,* 181 Va. 230, 24 S. E. (2d) 572; *Protestant Episcopal Education Soc.* v. *Churchman,* 80 Va. 718.

■ In the law of trusts there is a real and fundamental dis-

tinction between a charitable trust and one that is devoted to mere benevolence. The former is public in nature and valid; the latter is private and if it offends the rule against perpetuities, it is void.

"It is quite clear that trusts which are devoted to mere benevolence or liberality, or generosity, cannot be upheld as charities. Benevolent objects include acts dictated by mere kindness, good will, or a disposition to do good * * *. Charity in a legal sense must be distinguished from acts of liberality or benevolence. To constitute a charity the use must be public in its nature." Zollman on Charities, sec. 398, p. 268.

We are, however, reminded that charitable trusts are favored creatures of the law enjoying the especial solicitude of courts of equity and a liberal interpretation is employed to uphold them. Zollman on Charities, sec. 570, p. 391; 2 Bogert on Trusts, sec. 369, p. 1129.

"Courts incline to a liberal construction in order to uphold charitable donations against the charge that they violate the perpetuity rule." Zollman on Charities, sec. 548, p. 379.

With the principle announced we are in accord. That is made certain by the quotation in *Thomas v. Bryant,* 185 Va. 845, 40 S. E. (2d) 487, 169 A. L. R. 257, which was approved in *Allaun v. First, etc., Nat. Bank, supra*:

" 'Charitable gifts are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them.' All doubts will be resolved in their favor." (185 Va. p. 852.)

Appellant contends that the gift qualifies as a charitable trust under the definition in *Allaun v. First, etc., Nat. Bank, supra.* It is also said that it not only meets the requirements of a charitable trust as defined in Restatement of the Law of Trusts, *supra.* but specifically fits two of those classifications, *viz.*:

"(b) trusts for the advancement of education;

"(f) other purposes the accomplishment of which is beneficial to the community."

We now turn to the language of the will for from its context the testator's intent is to be derived. *Sheridan v. Krause,* 161 Va. 873, 172 S. E. 508, 91 A. L. R. 1067. Its interpretation must be free from and uninfluenced by the unyielding rule

against perpetuities. Yet, when the testator's intent is ascertained, if it is found to be in contravention of the rule, the will, in that particular, must be declared invalid.

"Our first duty is to construe the will; and this we must do, exactly in the same way as if the rule against perpetuities had never been established, or were repealed when the will was made; not varying the construction in order to avoid the effect of that rule, but interpreting the words of the testator wholly without reference to it." *Dungannon* v. *Smith,* 12 Cl. and F. 546, at p. 599.

"The Rule against Perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artifical, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the Rule did not exist, and then to the provision so construed the Rule is to be remorselessly applied." Gray's Rule Against Perpetuities, sec. 629. Of like effect are 41 Am. Jur., sec. 13, p. 58, and *Rose* v. *Rose,* 191 Va. 171, 174, 60 S. E. (2d) 45.

In clause "SECOND" of the will the trust is set up, and by clause "THIRD" full power is bestowed upon the trustee to invest and reinvest the estate and collect the income for the purposes and uses of the trust. In paragraphs (1) and (2), respectively, of clause "SECOND" in clear and definite language the discretion, power and authority of the trustee in its disposition and application of the income are specified and limited. Yearly on the last school day before Easter and Christmas each youthful beneficiary of the testator's generosity is to be paid an equal share of the income. In mandatory language the duty and the duty alone to make cash payments to each individual child just before Easter and Christmas is enjoined upon the trustee by the certain and explicit words that it "shall divide the net income * * * and shall pay one of such equal shares to each child in such grades."

Without more, that language and the occasions specified for payment of the funds to the children being when their minds and interests would be far removed from studies or other school activities definitely indicate that no educational purpose was in the testator's mind. It is manifest that there was no intent or belief that the funds would be put to any use other than such as youthful impulse and desire might dictate. But in each instance immediately following the above-quoted language the

sentence concludes with the words or phrase "to be used by such child in the furtherance of his or her obtainment of an education." It is significant that by this latter phrase the trustee is given no power, control or discretion over the funds so received by the child. Full and complete execution of the mandate and trust imposed upon the trustee accomplishes no educational purpose. Nothing toward the advancement of education is attained by the ultimate performance by the trustee of its full duty. It merely places the income irretrievably and forever beyond the range of the trust.

Appellant says that the latter phrase, "to be used by such child in furtherance of his or her obtainment of an education", evinces the testator's dominant purpose and intent. Yet it is not denied that the preceding provision "shall divide the net income into as many equal parts * * * and shall pay one of each equal parts to such child" is at odds with the phrase it relies upon. The appended qualification, it says, however, discloses a controlling intent that the 450 or more shares are to be used in the furtherance of education, and it was not really intended that a share be paid to each child so that he or she could during the Christmas and Easter holidays, or at any other time, use it "without let or hindrance, encumbrance or care." With that construction we cannot agree. In our opinion, the words of the will import an intent to have the trustee pay to each child his allotted share. If that be true,—and it is directed to be done in no uncertain language—we know that the admonition to the children would be wholly impotent and of no avail.

In construing wills, we may not forget or disregard the experiences of life and the realities of the occasion. Nor may we assume or indulge in the belief that the testator by his injunction to the donees intended or thought that he could change childhood nature and set at naught childhood impulses and desires.

Appellant asserts that literal performance of the duty imposed upon it—pay to each child his share—would be impracticable and should not be done. Its position in that respect is stated thus: "We do not understand that under the law of Virginia a court would pay money for education into the hands of children who are incapable of handling it." It then says that the funds could be administered by a guardian or under sec. 8-751, Code, 1950, (where the amounts are under $500), a court

could direct payment to be made to the recipient's parents.

With these statements, we agree. But because the funds could be administered under applicable statutes has no bearing upon nor may that device be resorted to as an aid to prove or establish the testator's intent. We are of opinion that the testator's dominant intent appears from and is expressed in his unequivocal direction to the trustee to divide the income into as many equal parts as there are children beneficiaries and pay one share to each. This expressed purpose and intent is inconsistent with the appended direction to each child as to the use of his respective share and the latter phrase is thus ineffectual to create an educational trust. The testator's purpose and intent were, we think, to bestow upon the children gifts that would bring to them happiness on the two holidays, but that falls short of an educational trust.

If it be determined that the will fails to create a charitable trust for *educational purposes* (and our conclusion is that it is inoperative to create such a trust), it is earnestly insisted that the trust provided for is nevertheless charitable and valid. In this respect it is claimed that the two yearly payments to be made to the children just before Christmas and Easter produce "a desirable social effect" and are "promotive of public convenience and needs, and happiness and contentment" and thus the fund set up in the will constitutes a charitable trust. 2 Bogert on Trusts, sec. 361, p. 1090, and 3 Scott on Trusts, sec. 368, p. 1972.

The definition of the word "charity" as it appears in *Collins* v. *Lyon, supra,* is relied upon to sustain this position. In that decision the meaning of the word "charity" as given in *Wilson* v. *First Nat. Bank,* 164 Iowa 402, 145 N. W. 948, was quoted with approval as follows:

"The word 'charity', as used in law, has a broader meaning and includes substantially any scheme or effort to better the condition of society or any considerable portion thereof. It has been well said that any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience, is a charity."

Numerous cases that deal with and construe specific provisions of wills or other instruments are cited by appellant to uphold the contention that the provisions of this will, without

reference to and deleting the phrase "to be used by such child in the furtherance of his or her obtainment of an education" meet the requirements of a charitable trust. Many of those cases are listed below.[1]

Upon examination of these decisions, it will be found that where a gift results in mere financial enrichment, a trust was sustained only when the court found and concluded from the entire context of the will that the ultimate intended recipients were poor or in necessitous circumstances.

■ A trust from which the income is to be paid at stated intervals to each member of a designated segment of the public, without regard to whether or not the recipients are poor or in need, is not for the relief of poverty, nor is it a social benefit to the community. It is a mere benevolence—a private trust—and may not be upheld as a charitable trust. Restatement of the Law of Trusts, sec. 374, p. 1156:

"* * * if a large sum of money is given in trust to apply the income each year in paying a certain sum to every inhabitant of a city, whether rich or poor, the trust is not charitable, since although each inhabitant may receive a benefit, the social interest of the community as such is not thereby promoted."

In 2 Bogert on Trusts, sec. 380, we find:

"As previously stated, gifts which are mere exhibitions of liberality and generosity, without regard to their effect upon the donees, are not charitable. There must be an amelioration of the condition of the donees as a result of the gift, and this improvement must be of a mental, physical, or spiritual nature and not merely financial. Thus, trusts to provide gifts to children, regardless of their need, or to make Christmas gifts to members of a certain class, without consideration of need or effect, are not charitable. * * *." (p. 1218.)

"Gifts which are made out of mere sentiment, and will have no practical result except the satisfying of a whim of the donor,

---

[1] *Attorney General* v. *Comber,* 2 Sim. & St. 93, 57 Eng. Rep., Full Rep. 281; *Thompson* v. *Corby,* 27 Beav. 649, 57 Eng. Rep., Full Rep. 257; *Powell* v. *Attorney General,* 3 Mer. 48, 36 Eng. Rep. Full Rep. 19; *Gilliam* v. *Taylor,* L. R. 16, Eq. 581, 42 L. J. Ch. 674; *In re Wood's Estate,* 108 Cal. App. 694, 292 P. 144; *In re Mellody,* 1 Ch. 228, 87 L. J. Ch. 185, 118 L. T. 155; *In re Estate of Nilson,* 81 Neb. 809, 116 N. W. 971; *Buckley* v. *Monck,* (Mo.), 187 S. W. 31; *Sears* v. *Parker,* 193 Mass. 551, 79 N. E. 772; *In re Crawford's Estate,* 294 Pa. 201, 143 A. 912; *Trustee* v. *Carmody,* 211 N. Y. 286, 105 N. E. 543; *Appeal of Eliot,* 74 Conn. 586, 51 A. 558; *Hamilton* v. *Mercer Home, etc.,* 228 Pa. 410, 77 A. 630, and *Bowditch* v. *Attorney General,* 241 Mass. 168, 134 N. E. 796, 28 A. L. R. 713.

are obviously lacking in the widespread social effect necessary to a charity.'' (p. 1219.)

Of the cases relied upon in which the trust was sustained as charitable *In re Mellody (Branwood v. Haden)*, 1918, 1 Ch. 228, 87 L. J. Ch. 185, 118 L. T. 155, and *In re Estate of Nilson*, 81 Neb. 809, 116 N. W. 971, appear to be as much if not more in point with appellant's contention than any others.

In the *Mellody Case* income from the trust fund was to be used by the trustee ''to provide an annual treat or field day for the schoolchildren of Turton or as many of such children as the same will provide for.'' It will thus be seen that the trustee had control of and administered the income from the fund and it was devoted to a supervised annual outing for school children as such. Its intended use bore a direct relationship to their schooling and education. The court held that it was a charitable trust because it (1) tended to the advancement of education, and (2) was ''for purposes beneficial to a particular section of the community.'' Speaking of the annual treat or field day provided for, it said:

''It may well be made, and, I doubt not, often is made, the occasion for pointing out to the children those objects of the countryside and nature about which during their school hours they have read in their books, or which they have seen in the pictures displayed upon the walls of their schoolroom. * * *.''

In the *Nilson Case,* the testator, a then resident of Nebraska, recited in his will that—

''Sixth. Being a native of the Tjosvold, Harmoen, Kingdom of Norway, where fishing and sailing are the chief industries, and being acquainted with the social and industrial conditions of the poorer classes of Norway, my sympathies go out to industrious and deserving servant girls, and to widows and orphans of deceased fishermen and sailors. Desiring to relieve such servant girls and widows and orphans, I give and bequeath to Akre church congregation (Akre Kirksogn) six thousand dollars, to be invested * * *'', and the interest to be distributed on each ''christmas to worthy and needy servant girls and the widows and orphans of deceased sailors and fishermen who are not a public charge.'' (pp. 810, 811 of 81 Neb.)

The pastor of the congregation or parish, the president of the county commissioners, and the county treasurer of Akre Kirksogn, Norway, and their successors in office were desig-

nated trustees. They were peculiarly well situated to know and select who were in need of and deserving of the testator's assistance. Though the language used excludes from the class of beneficiaries those who are public charges, the context of the entire will when the trustees selected and their implied powers and discretion are taken into account sufficiently authorizes selection by them of beneficiaries from the designated class who are in need, deserving and worthy of help. The court said:

"We are also of the opinion that the designation of the respective officers whose duty it shall be 'to carry out the provisions of this bequest' impliedly confers upon these officials the power to select from within the class the individuals who shall receive the bounty. It was, no doubt, with reference to the peculiar opportunities for knowledge as to the condition of the poor servant girls and widows and orphans afforded to these officers by virtue of their church relations that the testator selected them to execute the trust. It was impossible for him to select the individuals. He could only designate a class, and leave it to his trustees to select the individual beneficiaries of the charity, and no one seemed to him to be better fitted or to possess better qualities than those who resided among the poor people whom he wishes to help. * * *'' (81 Neb. at p. 823.)

In *Goodell* v. *Union Association of Children, etc.,* 29 N. J. Eq. 32, a bequest of $1,000 was left to Trinity Church Sunday School with directions that it be safely invested and the interest used to secure Christmas presents for the scholars of that school. There was no indication that the recipients were to be those found to be in necessitous circumstances nor is any implied power or discretion given to limit or apply the income to such individuals. In the following language, the court declared that no charitable trust was created:

" * * * What the gifts are to be does not appear. It does not appear that they are even to be rewards of merit, or to be used as means of inducing attendance on the part of the scholars at the school, or of promoting their good conduct there, or of inciting them to attention to religious instruction given to them there; nor whether they are to be given to all the scholars or part only. The gift is in trust, and it is not a charity in the legal sense. It is void.'' (29 N. J. Eq. p. 35).

Of similar import is *Pleasants* v. *Attorney General* (1923), 39 T. L. R. 675. There property was left in trust with the

direction that the trustee, among other things, buy at a certain time each year a pennyworth of sweets for each boy and girl below fourteen years of age residing within a certain parish. It was decided that the trust was non-charitable and void.

Nor do we find any language in this will that permits the trustee to limit the recipients of the donations to the school children in the designated grades who are in necessitous circumstances, and thus bring the trust under the influence of the case styled *Appeal of Eliot,* 74 Conn. 586, 51 A. 558.

The conclusion there reached was that where a trust is set up and a class is designated as beneficiary which generally contains needy persons, the testator will be presumed to have intended as recipients those members of the class who are in necessitous circumstances.

Payment to the children of their cash bequests on the two occasions specified would bring to them pleasure and happiness and no doubt cause them to remember or think of their benefactor with gratitude and thanksgiving. That was, we think, Charles B. Henry's intent. Laudable, generous and praiseworthy though it may be, it is not for the relief of the poor or needy, nor does it otherwise so benefit or advance the social interest of the community as to justify its continuance in perpetuity as a charitable trust.

In 1946 the General Assembly enacted what is now commonly called the *cy pres* statute. Acts 1946, ch. 187, p. 294. It appears as sections 55-31 and 55-32, Code 1950, but only section 55-31 is material to the question at hand and appears below.[2] Prior to the passage of this act, there was no decided case that had applied the *cy pres* doctrine in Virginia. In *Thomas* v. *Bryant, supra,* it was said, ''Whether the *cy pres* doctrine in its broader

---

[2] "When any corporation, firm, association, partnership or person gives, bequeaths, grants, conveys or devises any real or personal property in trust to or for any educational, charitable or eleemosynary purpose, the indefiniteness or uncertainty of the beneficiaries named in any instrument creating such a gift, bequest, grant, conveyance or devise, or the indefiniteness of the purpose of the trust itself, shall not defeat any such trust, and if the trust is in other respects valid under the laws of this State, it shall be administered to conform as near as may be to the purpose for which created, or, if impossible of performance for this purpose, for some other educational, charitable, benevolent or eleemosynary purpose. However, unless the maker of the trust has specifically designated some other body, committee, agency, or entity to determine what that purpose shall be and to administer the trust (in which event the determination and administration by that body shall be valid), the determination of the purpose of the trust shall be made by a court of equity in the county or city wherein the property or the greater part thereof is located and the administration of the trust shall be under the direction of such court. * * *"

aspects will be applied in a proper case we need not here decide.'' And reference was made to 25 Va. Law Rev. 109, 114, for discussion of the status of *cy pres* in Virginia. This statute was enacted shortly before the decision in *Thomas* v. *Bryant, supra,* but that was a suit instituted in 1943, and by an express provision of the Act, it excluded from its application any trust or fund which was the subject of pending litigation.

Section 55-31 is now invoked and it is contended that under it the trust should not be allowed to fail. If the trust set up is in other respects valid as a charitable trust—that is, if the instrument creating the trust discloses a general charitable intent, but (a) the beneficiaries are indefinite or uncertain, or (b) the purpose of the trust is indefinite—this legislation empowers the specified agency, or if none be specified, the court, to determine to what purpose the trust estate shall be applied. If the necessary charitable intent be found, defects in the trust may be cured, beneficiaries selected and determined upon, purposes for the trust supplied, and suitable plans and details of execution and administration adopted. But the court (or other agency if one be designated) is not given carte blanche to change a mere benevolent intent and generous bequest (private trust) into a charitable trust.

Here the ultimate beneficiaries of the class are not uncertain or indefinite. They are the pupils in the three designated grades of John Kerr School, and though difficulty is encountered in determining which of the inconsistent provisions of the will expresses the testator's dominant intent, yet once his true intent is ascertained the purpose of the trust is not uncertain or indefinite. It is that the school children receive their two payments on the designated times and occasions and that, as we have said, evinces no general charitable intent. No intent to apply the income to educational, charitable or eleemosynary purposes as required by the statute is disclosed.

The statute does not permit or allow the fundamental and dominant intent of a testator or grantor to be altered. It may not be used to transform a private trust into a charitable trust and thus employed to evade, impair or set at naught the rule against perpetuities.

No error is found in the decrees appealed from and they are affirmed.

*Affirmed.*