# Richmond

W. C. Thomas, Executor, et als. v. Lula Watts Bryant, et als.

November 25, 1946.

Record No. 3090.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Buchanan, JJ.

The opinion states the case.

*W. C. Thomas* and *J. C. Shaffer*, for the appellants.

*Campbell & Campbell* and *R. A. McIntyre*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

George W. Simmerman, a resident of Wythe county, died testate on June 28, 1939, leaving an estate consisting of both real and personal property valued at approximately $240,000. After a number of specific gifts for the benefit of his widow and others, he made the following provision, the validity of which is involved in the present controversy:

"SIXTH: I direct my surviving Executor, after the death or remarriage of my wife, and the payment of the legacies hereinbefore mentioned, to apply and use all of the remainder of my estate in the building and maintenance of a home for destitute and dependent aged white people, both men and women, living in Wythe County, Virginia, the said home is to be located in the Town of Wytheville, Virginia, and is to be named 'The George W. Simmerman Home for the Aged.' The legal title to all of the property used in the erection of this home and the maintenance of the same, and the legal title to the home after it is erected, and the fund invested for its maintenance, is to be vested in five (5) Trustees, and which five Trustees are to be elected and appointed in the following manner: * * * * ."

Then followed a provision by which each of the congregations of five churches in Wytheville was to select a trustee, who in turn was to be appointed trustee by the Circuit Court of Wythe county. Succeeding trustees were to

be selected in a similar manner.  It was further provided that these trustees so selected and appointed "shall hold the legal title to all of the real estate and personal property constituting this home for the aged and also the legal title to the fund to be held by said trustees for the operation and maintenance of this home and support of the inmates therein."

"Approximately one-third of the residue" of the estate was to be applied to the acquisition or erection of the buildings and the furnishing and equipping the same, and the other two thirds was to be "invested by the five trustees in United States Government bonds and the net income from which is to be used by the five trustees in maintaining and operating said home and in the support and care of the inmates therein," including "reasonable and necessary medical and hospital attention."

He further provided that:  "As to the kind, size and plan of this home for the aged, and as to the rules and regulations for the admission of inmates to the home, as well as to the operation and management of the same, I leave to the discretion and judgment of the five trustees of said home to be elected and appointed as hereinbefore stated, except that I direct and request that no person, male or female, be admitted to this home who has been addicted to intoxicating whiskey, or who has been addicted to the drug habit, or who is, or has been of immoral character."

The testator concluded this portion of his will thus:  "It is my sincere wish and desire that the home for the aged, hereinbefore referred to, be perpetual in its operation, and that it shall render a noble service in the purpose for which it was created."

The widow renounced the will and elected to take such portion of the estate as she was entitled to under the statute.  Both sides agree that the effect of this renunciation was to accelerate the payment of the special bequests and the provision for the establishment of the home.

In 1943, certain of the heirs of the testator filed their bill in the court below against the executors and the trustees

for the George W. Simmerman Home for the Aged, the latter having in the meantime been selected and appointed in the manner provided for in the will. The object of the suit was to obtain a construction of the will and a declaration by the court that the sixth clause was void in so far as it attempted to provide for the establishment of a home for the aged. It was alleged that the provision was void for three reasons: (1) Because of the impossibility of performance in that the available fund was insufficient for the designed purpose; (2) because it attempted to create a charity which was too indefinite for enforcement under the statutes of this State; and (3) because the attempted trust violated the rule against perpetuities.

A demurrer to the bill was filed by the executors, who together with the trustees filed answers insisting upon the validity and possibility of performance of the intended charitable trust.

After the formulation of the issues it was stipulated between the parties that the executors would have available for the establishment and performance of the trust the sum of $93,000 in cash, and in addition thereto the testator's residence on Fourth avenue, in Wytheville, which, however, was in need of substantial repairs.

The parties likewise agreed that the income from the fund when invested in government bonds, as directed by the terms of the will, would yield approximately $2,250 per year.

Each side took the evidence of a number of witnesses on the issue as to whether the property available for the purpose and the income therefrom would be sufficient to establish and maintain the proposed trust in the manner contemplated by the testator. Some of these witnesses testified *ore tenus* before the judge of the lower court at various times and places in the State, while the evidence of others was taken in the form of depositions. Upon a consideration of this evidence the trial court, in a written opinion, reached the conclusion that the property available for the purpose and the income therefrom was insufficient to establish and

maintain the intended trust, that therefore it was void, that the testator died intestate as to such portion of the estate thus attempted to be disposed of, and that this property passed to his heirs and distributees. From a decree to this effect the present appeal has been taken by the executors and trustees.

The appellants make these two main contentions:

(1) The preponderance of the evidence fails to overcome the presumption of the validity of the trust, and fails to show that the property available for the purpose is insufficient to establish and maintain the trust. On the contrary, they say, it shows that with careful management, and with the aid from outside sources on which they have the right to rely, the estate is amply sufficient for the execution of the trust.

(2) Even if it be conceded that the property is insufficient for the execution of the trust in the precise manner prescribed by the testator, a court of equity by the application of the *cy pres* doctrine, or the kindred doctrine of approximation, should apply the fund as nearly as possible to effectuate the charitable purpose of the testator.

The heirs introduced a number of witnesses who were connected with the operation of various homes for the aged throughout the State. The evidence of these witnesses shows that the per annum cost of operation of such institutions ranged from $339 to $1,339 per inmate. Most of these witnesses were of the opinion that such an institution, open to inmates of both sexes, would require a staff of attendants and servants at an annual cost in excess of $2,300, leaving nothing for food, clothing, etc., for the inmates. It should be said, however, that these observations were based on experiences gained in the full scale operation of settled and established homes caring for a number of inmates.

Among the witnesses for the heirs were various officials of the Protestant Episcopal Church Home with 32 inmates, Eastern Star Home of Virginia with 27 inmates, Richmond Home for Ladies with 48 inmates, all of Richmond, Mary Louise Home of Roanoke with 16 inmates, Sunnyside Home of Danville with 26 inmates, Mary Ludlow Home of Nor-

folk with 5 inmates, and the Elks National Home[1] of Bedford with 240 inmates.

However, several of these witnesses admitted, on cross-examination, that with the income anticipated from the Simmerman trust, the home might be established and conducted provided only a small number of persons were admitted.

A number of witnesses introduced by the executors and trustees, and connected with smaller institutions of this character, testified that by using the testator's Wytheville residence as a home, the trust could be set up and carried on with the anticipated revenue, and thus care for a small number of inmates. Several of the ladies connected with the Mary Louise Home of Roanoke were definitely of this opinion. So were two officials of the Mary Bickel Home of Staunton, and those of the Home for Aged Ladies of Charlottesville and the Petersburg Home for Ladies.

Mr. Ruffin, the secretary and treasurer of the Episcopal Church Home of Norfolk, which has converted a residence into a home where from six to eight persons are cared for, was of opinion that "if properly managed" the proposed Simmerman Home could be established and operated on the estimated income.

Finally, Mrs. Lee, the superintendent of public welfare for Wythe county, the only local witness who testified on the direct issue involved, and who was, of course, familiar with local conditions as well as the subject matter, was of opinion that "a good beginning could be made with the facilities at hand," including the testator's residence and garden connected with it. She was of opinion that in the beginning only a matron and cook would be required, and that these could be employed at a total salary of $80 per month.

Moreover, the executors and trustees offered in evidence a resolution of the board of supervisors of Wythe county, commending the purposes of the proposed trust and prom-

---

[1] This institution operates on an annual budget of $140,000, out of which it pays its superintendent the sum of $7,500.

ising to lend aid, by way of food and supplies from the county farm, in the operation of the home.

It is clear from a reading of the evidence that it will not be possible, with the available funds, to establish and maintain on a large scale a home for the care of the "destitute and dependent aged white people, both men and women, living in Wythe county." But it is, we think, by no means clear that the fund will be insufficient to care for a small number of such people. Indeed, we think the preponderance of the evidence shows that this can be done, particularly with the promised aid of the local board of supervisors.

The appellees argue that the evidence shows that the testator thought that the residuum of his estate available for the establishment and maintenance of this trust was much larger than it turned out to be, and that, therefore, he must have contemplated the establishment of a large home capable of taking care of quite a number of people. But there is nothing in the language used to indicate such an intent. On the contrary, he leaves to "the discretion and judgment of the five trustees" "the kind, size and plan of this home" and "the rules and regulations for the admission of inmates" thereto. The only restriction is that the inmates must be of good moral character and not addicted to the use of alcohol or drugs.

As is said in the recent case of *Hinsdale* v. *Chicago City Missionary Soc.*, 375 Ill. 220, 30 N. E. (2d) 657, 663: "Charitable gifts are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them." All doubts will be resolved in their favor.

In the case before us the testator desired that this fund be used, for a worthy charitable purpose. It is clear that he did not intend that his heirs should receive it. While the income from the fund may not be sufficient to maintain and establish a home on the scale of some other institutions of like character, there is no reason why it should not be applied as far as is practicable to carry out the testator's

intent. Surely, the fact that the fund may not be adequate to provide for the needs of all of the indigent aged of Wythe county is no reason why it should be taken from the small number who may be aided thereby and turned over to the heirs, contrary to the intent of the testator.

The recent case of *In re Price's Will*, 264 App. Div. 29, 35 N. Y. S. (2d) 111, affirmed, *per curiam*, 289 N. Y. 751, 46 N. E. (2d) 354, is strikingly similar to that before us. There a widow gave her farm, household furniture, and other personal property to the Board of Pensions of the Presbyterian Church to establish a home for retired ministers of that sect and their wives. She directed that certain personal property be invested, that the income therefrom be applied to the maintenance, upkeep and operation of the home. She also provided that in case the trust should fail or become impossible of realization, then the property intended for the establishment and use of the home should go to Elmira College. It developed that the income from the fund set aside for the support and maintenance of the home amounted to from $2,500 to $2,800.

The college filed a suit for the construction of the will and asked that the trust be declared void on the ground of its impossibility of realization because of inadequacy of the fund. It prayed that as secondary legatee it be decreed to be entitled to the fund. The college contended that the home was intended to be equipped to operate at full capacity and offered considerable testimony to show that the income from the fund was inadequate for the purpose. This contention was rejected, the court pointing out that the will made no specification as to the number to be accommodated, nor could the inference be drawn from the language of the testatrix that the home should be equipped to operate at full capacity.

Of this the court said (35 N. Y. S. (2d), at page 117): "It may be that the fund provided is insufficient to afford accommodation for all persons eligible thereto under the terms of the trust, but that is no reason why the corporation should not be permitted to organize and carry on a

home for the benefit of as many as may be accommodated within the means at its disposal. No charity is unlimited in its resources, and all must draw a line upon admission to their benefits, when their ability to extend such benefits is exhausted."

Accordingly, it was held that the plan of the testatrix should be carried out to the extent of the fund provided. On appeal the decision of the Appellate Division was affirmed *per curiam* by the highest court of New York.

Although the *cy pres* doctrine is applied in New York, the court pointed out that the principle was not applicable under the particular circumstances, because, it said, the testatrix herself had provided for a gift over of the property to Elmira College in the event of the failure of the charitable use to which she, in the first instance, directed that it should be devoted.

The opinion in *In re Price's Will, supra*, is further enlightening in its analysis of the evidence bearing on the insufficiency of the fund. Ministers, it reasoned, were not ordinarily furnished by their congregations with magnificent homes or luxurious appointments. On the contrary, they were often "content with the bare necessities," and would expect nothing more in a home for their retirement.

Certainly, the same is true of indigent persons who might seek shelter in the Simmerman Home. They would not expect the comparative luxuries of the Elks National Home which operates on an annual budget of $140,000, and furnishes its inmates the privileges of a golf course, poolroom and moving pictures.

Another like case is that of *Jones' Unknown Heirs* v. *Dorchester* (Tex. Civ. App.), 224 S. W. 596. There it was contended that a testamentary trust created for the erection and maintenance of a hospital for the care of the poor, as a memorial to the testator, must fail because the estate was not as large as had been supposed by the testator and was not sufficient for the erection and maintenance of as costly a hospital as the testator had contemplated. In rejecting this contention the court pointed out that the testator had not

used any language from which it might be inferred that a hospital with any specified number of rooms, beds, attendants, or other particular appointments, would enter into its make-up, nor was there any intimation that he intended that the building should cost any amount. All of these matters, it was pointed out, were left to the sound discretion of the trustees. Accordingly, the court declined to invalidate the trust and approved the erection and maintenance of a hospital on a smaller scale.

To the same effect see *Wilson* v. *First Nat. Bank*, 164 Iowa 402, 145 N. W. 948, 953, Ann. Cas. 1916D, 481. See also, Note, Ann. Cas. 1916D, 487, collecting other cases.

The appellees argue that this reasoning is but an application of the *cy pres* doctrine which, they say, has not been adopted in Virginia, but was rejected in *Massanetta Springs Summer Bible Conference Encampment* v. *Keezell*, 161 Va. 532, 542, 171 S. E. 511, and in some earlier cases as exemplified in *Gallego* v. *Attorney General*, 3 Leigh (30 Va.) 450, 24 Am. Dec. 650.

Whether the *cy pres* doctrine in its broader aspects will be applied in a proper case we need not here decide.[2]

In the present case we hold, without resorting to the *cy pres* doctrine, that the use of the residence of the testator and the fund set aside for the maintenance of the Simmerman Home, so far as possible, are within the expressed plan of the testator and should be carried out to the extent of the fund provided. *In re Price's Will, supra.*

Should the income from the trust fund be augmented by outside donations and assistance, such as that promised by the local board of supervisors, so much the better. Such donations would in no manner trespass on the intent of the testator or violate the terms of the trust.

---

[2] See 25 Va. Law Review 109, 114, for a discussion of the status of the doctrine in Virginia and the conclusion that whether it will be adopted in this State in an appropriate case is an open question.

See also, Acts 1946, ch. 187, p. 294, amending the Code of Virginia by adding section 587a validating the doctrine in this State, but excluding from its application any trust or fund which is the subject of "pending litigation." The present suit was instituted in 1943.

What number of persons within the limitations prescribed by the testator should be admitted, and what servants should be employed, are, of course, matters within the discretion of the trustees.

■■ As to the appellees' contention that the gift is invalid *per se* for indefiniteness little need be said. In *Moore v. Downham*, 166 Va. 77, 79, 184 S. E. 199, 200, we held that under Code, section 587, as amended in 1914 (Acts 1914, ch. 234, p. 414), "every devise made for charitable purposes is just as valid as a devise made to a certain natural person or for his benefit." The specific provision there held to be valid was a bequest of all of a testator's property to his executor and trustee, to be disposed of "for charitable purposes." The principles there laid down are sufficiently broad to insure the validity of the gift now under consideration.

Finally, the heirs insist that even if the bequest be valid under our statutes and be possible of performance, nevertheless it is invalid because it violates the rule against perpetuities.

The argument is that under the language of the testator the residuum of the estate, after the death of the widow, was "to be vested" in five trustees, to be selected by the congregations of the respective churches located in Wytheville, and approved by the circuit court of the county; that since the election and approval of these trustees need not necessarily be effected within the required period of twenty-one years and ten months after the expiration of the widow's life estate, the attempted trust is void under the familiar principles stated in *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 403, 119 S. E. 89.

■ We cannot agree with this contention. It is well settled that the rule against perpetuities has reference to the time within which the interest vests and is not concerned with the postponement of the enjoyment of such interest. 41 Am. Jur., Perpetuities, section 23, p. 67; *Collins* v. *Lyon*, 181 Va. 230, 249, 24 S. E. (2d) 572, 581.

In 2 Bogert on Trusts and Trustees, section 343, pp. 1064-5, the author, in discussing whether a donation of property in trust for the benefit of the poor after the death of all of the members of the donor's immediate family violates the rule against perpetuities, thus states the determinative principle: "Here the fact that the rule against remoteness applies only to the vesting in interest of contingent property rights and not to the vesting of property in possession must be recalled. If the settlor gives a vested remainder interest to the trustees for charity at the time of his death, it is immaterial-how long it will be before the trustees will come into possession of the realty or personalty involved."

■ " * * * The essential thing is that the beneficial interest under the trust vests in the *cestui que trust* within the time limited by law for the vesting of legal estates." 41 Am. Jur., Perpetuities, section 43, p. 87, and authorities there cited.

■ Tested by these principles we think it was the clear intent of the testator that the class of individuals whom he intended to benefit should take a vested interest in the residuum of his estate immediately upon his death, and that merely the enjoyment thereof was postponed beyond the life estate of the widow. The language used is: "I direct my surviving Executor, after the death or remarriage of my wife, and the payment of the legacies hereinbefore mentioned, to apply and use all of the remainder of my estate in the building and maintenance of a home for destitute and dependent aged white people, both men and women, living in Wythe County, Virginia."

It is true that the testator provided that, "The legal title to all of the property used in the erection of this home and the maintenance of the same, and the legal title to the home after it is erected, and the fund invested for its maintenance, *is to be vested in* five trustees" (italics supplied), to be selected in a stated manner. But it is clear that this provision was intended not to postpone the vesting of the estate, but indicated merely the manner in which the legal title to the property was to be held. In fact, in the same

paragraph, the testator so indicates by stating that the five trustees, so selected and appointed, "shall hold the legal title to all of the real estate and personal property constituting this home for the aged and also the legal title to the fund to be held by said trustees for the operation and maintenance of this home."

On the whole we are of opinion that the decree should be reversed and the bill dismissed. It is so ordered.

*Reversed and final decree.*