## Richmond

MARY BOONE McCLURE, ET AL. v. CURRY CARTER, EXECUTOR AND TRUSTEE, ETC.

October 10, 1960.

Record No. 5150.

Present, All the Justices.

The opinion states the case.

*J. M. Perry*, for the appellants.

*C. M. Elder*, for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Curry Carter, executor and trustee under the will of Alma B. Foster, deceased, filed his bill in the court below against the beneficiaries named in the will and the decedent's heirs at law, praying *inter alia* for the interpretation of the will and the determination of whether under certain of its provisions a valid charitable trust was established. The defendants filed an answer and cross bill charging that the trust sought to be created was not charitable or public but was a mere private or benevolent trust which is void under the rule against perpetuities, that the property sought to be disposed of passed to the decedent's heirs and distributees, and praying for a declaratory judgment to that effect. After hearing the case on the pleadings and the will, the court entered a decree holding that the will established a valid charitable trust and from this decree adjudicating the principles of the cause the defendants have appealed under Code, § 8-462(2)(c). In their assignments of error the defendants make the same contentions which they made in the court below.

The facts as disclosed by the pleadings are not in dispute. The testatrix, who died on August 14, 1958, was the elderly, childless widow of G. Kemper Foster who predeceased her on May 18, 1951. At the time of her death Mrs. Foster lived in a two-story frame 12-room house on a 69-acre farm, in Augusta county, which she and her husband had occupied. Her gross estate was appraised at approximately $107,000, of which $68,000 is personalty and $39,000 is real estate.

By the second item of her will the testatrix bequeathed $25 to each of her five named nieces and nephews. By the third item she gave to each of her five nieces, Edith Searson Hawpe, Mary Boone McClure, Anna Katherine Brooks, Polly Dunlop Hawpe and Thelma Sanders Hawpe, "the right and privilege," within five years of her death, "to build, maintain and occupy six-room homes" on lots 50 by 100 feet fronting on the public highway near her home. She

further provided that, "At the end of the five-year period mentioned above, those nieces who have not availed themselves of the foregoing privilege shall forfeit all right and interest herein and such lots as have not been built upon and occupied shall be and remain a part of my estate, to be dealt with in accordance with Item Four."

Items Four and Eight, with which we are mainly concerned, read thus:

"Item Eight: Should the occasion ever arise where there are no all my personal estate, exclusive of those pieces of personal property used and enjoyed in and about the home which I now occupy, and the proceeds derived therefrom he shall turn over to himself as trustee hereunder upon the following charitable trust:

"Said trustee and his successor or successors in title shall establish and maintain in perpetuity at the residence now occupied by me as a memorial to myself and my beloved late husband, G. Kemper Foster, a home to be known and designated as 'Our Home,' to be used and enjoyed by indigent widows and maiden ladies, who shall be maintained and supported from the proceeds of said trust fund, supplemented by the rents, issues and profits from the farm lying adjacent to and/or surrounding 'Our Home,' which farm I give deavor to limit the number of occupants of 'Our Home' to such trust. In the selection of the beneficiaries under this Item the trustee and his successor or successors in title shall be the sole judges of who shall be admitted, but he and his successors in title are requested to prefer such indigent widows and maiden ladies as are named in Item Three and their heirs; and said trustee and his successors shall endevise and bequeath to said trustee upon the foregoing and following number as the proceeds from said trust fund and the rents, issues and profits from said farm will comfortably support and maintain; however, said trustee and his successors shall have the right to accept from said beneficiaries or others such sums as they may be deemed able to pay."

"Item Four: I direct my executor hereinafter named to liquidate applicants for the use and enjoyment of 'Our Home' and there appeared to be no eligible persons available for its use and enjoyment as contemplated by this will, said trustee or his successor or successors in title shall preserve 'Our Home' against wear and tear and depreciation and said trust shall be continued for a period of Five (5) years and if 'Our Home' should not be occupied for a con-

tinuous period of Five (5) years said trustee is authorized, and he is hereby directed, to liquidate the trust and turn the proceeds therefrom over to some strictly charitable organization of continued and proven service. In selecting said charitable organization said trustee shall be the sole judge of its entitlement to said fund."

Before considering these items it should be said that in Item Six the trustee, afterwards nominated, is "vested with the right, power and authority to select and appoint his successor or successors by an instrument in writing, to take effect in his lifetime or at his death." In Item Eleven, the testatrix provided that wherever the words executor and trustee are used in the will "they apply interchangeably and to their successors."

The contention of the appellant heirs is that by the fourth and eighth items of the will the testatrix intended to establish "two entirely separate trusts," neither of which is a valid charitable trust. They argue that Item Four creates the first trust which lacks the requisite characteristics of a public or charitable trust in that it is not for the benefit of an indefinite number of persons, but, on the contrary, is a personal benevolence for the benefit of the five named nieces of the testatrix. Being a mere personal benevolence, the appellants say, the trust violates the rule against perpetuities and is void in that it directs the trustee to maintain the home of the testatrix "in perpetuity" as a memorial to herself and her husband.

They next argue that Item Eight creates a second trust which is an attempted gift over to charity of the property devised in Item Four for noncharitable purposes; that such gift over is void because it is to vest upon the condition, "Should the occasion ever arise where there are no applicants for the use and enjoyment of 'Our Home' " and there are "no eligible persons available for its use and enjoyment as contemplated" by the will; and that such condition may happen at a time beyond the period fixed by the rule against perpetuities. Restatement of Trusts, 2d Ed., Vol. 2, § 401, p. 314; Scott on Trusts, Vol. 3, § 401.7, p. 2136; *Claiborne* v. *Wilson*, 168 Va. 469, 473-475, 192 S. E. 585, 586, 587.

We do not agree with this position. In the first place, under the plain language of Item Four the object of the bounty of the testatrix is the class of persons whom she describes "as indigent widows and maiden ladies," and not her named nieces. The essence of Item Four is that, "Said trustee and his successor or successors in

title shall establish and maintain in perpetuity * * * a home * * * to be used and enjoyed by indigent widows and maiden ladies, who shall be maintained and supported from the proceeds of said trust fund." The testatrix clearly specifies the manner in which the beneficiaries are to be selected. She says: "In the selection of the beneficiaries under this Item the trustee and his successor or successors in title shall be the *sole judges* of who shall be admitted, but he and his successors in title *are requested* to prefer such indigent widows and maiden ladies as are named in Item Three and their heirs." (Emphasis added.) The provision in favor of the named nieces is merely a request and not a command or direction. In the exercise of the discretion given him the trustee *may* select the named nieces, provided they qualify as "indigent widows and maiden ladies," but he is not compelled to do so. As we pointed out in *McKinsey* v. *Cullingsworth*, 175 Va. 411, 415, 416, 9 S. E. 2d 315, 317, "more than the mere use of precatory words" is required to stamp a trust on an estate given to another. See also, *Smith* v. *Trustees of the Baptist Orphanage*, 194 Va. 901, 904-906, 75 S. E. 2d 491, 493-495.

The fact that the gift is for an indefinite number of persons is characteristic of a charitable or public trust. Code, § 55-31; *Allaun* v. *First & Merchants Nat. Bank*, 190 Va. 104, 108, 56 S. E. 2d 83, 85.

The class of persons for whom the trust is established, that is, "indigent widows and maiden ladies," is a well-recognized object of a charitable trust. Webster's New International Dictionary, 2d Ed., defines "indigent" as: "Destitute of property or means of comfortable subsistence; needy; poor." See *City of Lynchburg* v. *Slaughter*, 75 Va. 57, 62, and *English* v. *Elks' National Home*, 161 Va. 145, 149, 170 S. E. 607, 608, where we adopted this definition. As used by the testatrix the word "indigent" modifies both widows and maiden ladies, that is, she intends to benefit both indigent widows and indigent maiden ladies.

In *Thomas* v. *Bryant*, 185 Va. 845, 40 S. E. 2d 487, 169 A. L. R. 257, we held that a devise for the maintenance of a home for "destitute and dependent aged white people * * * living in Wythe County, Virginia," created a valid charitable trust. The principles laid down in that case control the present case.

The fact that the testatrix recognizes that the resources of her estate will afford support for only a limited number of such indigent persons, and directs the trustee to "limit the number of

occupants of 'Our Home' to such number as the proceeds from said trust fund and the rents, issues and profits from said farm will comfortably support and maintain," does not invalidate the trust. *Thomas v. Bryant, supra,* 185 Va., at pages 852, 853, 40 S. E. 2d, at page 490.

■ Inasmuch as Item Four creates a valid charitable trust and not a mere benevolence for the nieces of the testatrix, there is no basis for the appellants' contention that Item Eight is a gift over from noncharity to charity. Indeed, Item Eight does not attempt to set up a new trust, as the appellants argue. It is merely a direction for the use of the property for other charitable purposes if and when the use contemplated by Item Four be terminated. Cf. Code, § 55-31.

The devotion of the use "to some strictly charitable organization of continued and proven service," to be selected by the trustee, is sufficiently definite and certain as to purpose. Code, § 55-26, as amended by Acts 1954, ch. 145, p. 144; *Thomas* v. *Bryant, supra,* 185 Va., at page 856, 40 S. E. 2d, at page 492; 10 Am. Jur., Charities, § 97, p. 654; 14 C. J. S., Charities, § 20, p. 454.

For these reasons the decree appealed from is

*Affirmed.*