# Richmond

## D. Herbert Painter, Et Al. v. Alexandria Water Company.

January 16, 1961.

Record No. 5161.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*William W. May* and *W. Hill Brown, Jr.*, for the appellants.

*Armistead L. Boothe* (*Boothe, Dudley, Koontz & Boothe*, on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

■ Alexandria Water Company filed its petition in the court below seeking to condemn certain lands and interests therein owned by Elmer A. Payne and located in Prince William county, for the purpose of building a reservoir for a public water supply system. The lands and interests therein sought to be taken were, (a) a fee simple interest in a parcel of 13.290 acres; (b) the right, title, interest and estate, if any, of the owner in and to a portion of the bed of Occoquan Creek adjoining the parcel first mentioned and containing 7.0 acres; (c) "Perpetual and assignable easements for exclusive possession, use, occupancy and control for flooding, using for ingress and egress, clearing and keeping clear of trees, shrubs, weeds and other growth, and preventing contamination of the adjacent reservoir, and for the creation and maintenance of a public water supply over a certain portion of the above described parcels," containing 5.118 acres.

During the pendency of the proceeding Payne conveyed to D. Herbert Painter and others certain lands included in which were 12.564 acres of the area sought to be taken in fee, 5.8 acres of the parcel lying in the bed of the stream, and 4.477 acres of the easement area. Painter and others were added as parties defendant. Later Payne conveyed to Alexandria Water Company his remaining interest in the properties originally sought to be acquired and the proceeding then continued against Painter and others, hereinafter called the owners, to acquire the interests in the lands which had been deeded to them by Payne.

After commissioners had been appointed, received the instructions of the court and heard the evidence, they filed a report making this award of compensation for the several properties:

(a) 12.564 acres to be acquired in fee,

at $125 per acre .............................. $1,570.50
(b) 5.8 acres in the bed of the stream,
at $25 per acre .............................. 145.00
(c) Easement in 4.477 acres, at $250
per acre .................................. 1,119.25

Total ...................................... $2,834.75
(d) Damages to the residue ....................... "None"

The owners excepted to this report on the ground that the court had improperly instructed the commissioners as to the principles upon which they should base their award of compensation for the easement. This exception was overruled and a final order was entered awarding compensation in conformity with the report of the commissioners. From this order the owners have appealed.

The principal assignment of error is that the lower court erred in its instruction to the commissioners as to the basis of their award for the value of the flowage easement to be taken. This instruction, the owners say, was based on an erroneous interpretation of the provisions in a deed dated April 19, 1928, between Elmer [A.] Payne and wife to Occoquan Hydro-Electric Power Company, the predecessor in title of Alexandria Water Company, with respect to the easement in controversy. The pertinent portion of that deed reads as follows:

"WHEREAS the said second party is now building a twenty-two foot dam across Occoquan Run, near Woolf Run Shoals, by reason of the completion of said dam the waters of said Run will be backed upstream, and which will continue to and along the lands owned by said first parties on said Run in the aforesaid District County and State; and

"WHEREAS the said Company may build a new dam or raise the height of the one now in process of construction above said twenty-two feet, at some future date.

"NOW, THEREFORE, THIS DEED WITNESSETH: That for and in consideration of the sum of ten dollars and other valuable consideration, the receipt of which is hereby acknowledged, the said parties of the first part do hereby bargain, sell, grant and convey unto the said second party, with general warranty, the exclusive right to back the waters up said Occoquan Run along and opposite their said lands so long as the same does not overflow the banks of said stream; *but with the further right, in the event of the*

*raising of the height of said dam or the construction of a new dam across said Run, to overflow his said land without the banks of said stream for which overflowing and all damages accruing therefrom the said second party is to pay to said first parties the sum of one hundred dollars for each and every acre of bottom land so overflowed, owned by said first parties.* (Emphasis added.)

"The said first parties covenant that they have the right to sell and convey the *aforementioned rights;* that they have done no act to encumber the same; that said grantee shall have quiet possession of the same, free from all encumbrances, and that they, the said first parties, will execute such further assurances of and to the same as may be requisite." (Emphasis added.)

It will be observed that the deed is concerned with two flowage rights: (1) "the exclusive right to back the waters up said Occoquan Run along and opposite their said lands so long as the same does not overflow the banks of said stream;" (2) "with the further right, in the event of the raising of the height of said dam or the construction of a new dam across said Run, to overflow his said land without the banks of said stream * * *."

The lower court adopted the view of the Water Company that the deed granted and conveyed to its predecessor in title a present and immediate interest in both flowage rights. Consequently, it instructed the commissioners that "in determining the fair market value of the respondents' land as of today, * * * the commissioners must bear in mind that the petitioner has the right to flood the land in the bed of the stream, amounting to 5.8 acres, without paying any compensation and has the right to flood the land it seeks to take in fee, amounting to 12.564 acres, and the land it seeks to take in easement, amounting to 4.477 acres, upon payment to the respondents of the sum of $100 per acre for the land taken." This was so, the instruction said, because the deed "grants the right to back water up in Occoquan Run and to overflow the banks of the Run upon payment of the sum of $100 per acre for the overflowing and for all damages resulting from such overflowing."

The owners do not question the ruling of the lower court that the deed contains a grant or conveyance to the Water Company's predecessor in title of the right to flood the land in the bed of the stream. But, they say, under the terms of the deed there is no grant or conveyance of any interest in the lands beyond the banks of the stream to which the "further right" of flowage may attach. Hence,

they say, as to such right the provision in the deed was a mere personal and nonassignable covenant, or, perhaps "endeavored to set up a future or executory interest" based upon the contingency of "the raising of the height" of the present dam or the construction of a new one, and that in either event, since the contingency possibly may not occur within the period prescribed by the rule against perpetuities, the provision was void *ab initio* and unenforceable.

It is, of course, well settled that the owner of land may grant and convey to another a perpetual right to overflow the grantor's land, and when so granted such right is an easement running with the land and enforceable against the subsequent owners of the land. 56 Am. Jur., Waters, § 163, pp. 629, 630; *Id.*, § 165, p. 632; *Id.*, § 260, p. 715; 93 C. J. S., Waters, § 27, p. 642 *ff.*; Thompson on Real Property, Perm. Ed., Vol. 2, § 664, p. 326. Hence, the crux of the case before us is whether it is the intent and effect of the deed to grant and convey to the Water Company's predecessor in title an immediate or present interest in the "further right" to flood the grantors' lands, or whether it is the intent and effect that such "further right" shall vest in the future, that is, "in the event of the raising" of the present dam or the construction of a new one. If the deed vests in the grantee an immediate or present interest in the "further right" of flowage, no question of the violation of the rule against perpetuities arises. If, on the other hand, the interest or estate in the "further right" of flowage is not intended to vest until the present dam is raised, or a new one constructed, such grant is not enforceable because this event may possibly be postponed beyond the period prescribed by the rule against perpetuities. *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 402, 403, 119 S. E. 89.

The purpose and intent of the parties must be determined from the language of the deed. The instrument is crudely drafted and its meaning is not clearly expressed. But when it is read as a whole and in the light of the purposes to be accomplished, we conclude that it is the purpose and intent of the parties to grant and convey an immediate present interest in both flowage rights therein described, that is, the right to back the waters upstream within and without the banks of the stream.

It will be observed that the deed recites that the grantee is now building a 22-foot dam which will result in the waters being backed upstream "along the lands owned" by the grantors. Next, it recites

that the grantee "may build a new dam or raise the height of the one" now being built. The implication is that this latter construction will result in some flooding of the grantors' lands. The deed then undertakes to deal with and settle both situations, the one apparently imminent and the other which may arise in the future. After granting and conveying the first right, that is, the right to back up the waters within the banks of the stream, the instrument deals "with the further right" of flowage beyond the banks of the stream which will result from raising the present dam or the construction of a new one. The draftsman brings this latter right within the granting clause by saying "but with the further right," etc. Here "with" indicates "association by way of addition or supplement" (Webster's Unabridged Dictionary, 2d Ed.), thus showing the purpose and intent to convey both rights of flowage. The remaining language of the sentence fixes the price which the grantee must pay when it exercises or comes into possession of the second flowage right.

As the lower court aptly pointed out in its opinion, "the very form of the instrument creating the right and the uses to which the parties obviously contemplated the land would be put" leads to the conclusion that giving to the grantee the further right of flowage was not "a mere personal covenant" but an interest in the land which "vested immediately upon the execution and delivery of the instrument."

▇ This view is fortified by the language of the covenant that the grantors "have the right to sell and convey the aforementioned *rights*." (Emphasis added.) While it is true that the granting clause cannot be enlarged by the covenants, the latter may be "resorted to for the purpose of aiding in the interpretation of the conveying part of the instrument." 16 Am. Jur., Deeds, § 242, pp. 575, 576. See also, 26 C. J. S., Deeds, § 130, p. 981.

▇ We are further fortified by the elementary principle that in case of ambiguity the instrument must be construed most strongly against the grantor and in favor of the grantee. "Thus, an instrument granting an easement of flowage must, consistent with its language, be most strongly construed against the grantor and most favorably to the grantee, and construed so as to pass to the grantee the greatest possible estate. The grant, moreover, should be construed in accordance with the conditions as they existed at the time the grant was made." 93 C. J. S., Waters, § 27-b, p. 644. See also, *Thew* v. *Lower Colorado River Authority*, Tex. Civ. App., 259 S. W. 2d 939,

941; *McIntire* v. *Marian Coal Co.*, 190 Ky. 342, 227 S. W. 298, 299; *Griffeth* v. *Utah Power & Light Co.*, 9 Cir., 226 F. 2d 661, 667.

■ Having reached the conclusion that it is the intent and effect of the deed to grant and vest in the grantee an immediate and present interest in the "further right" of flowage, such grant is not in violation of the rule against perpetuities because the payment of the consideration therefor is postponed until the enjoyment of the interest, that is, when the floodage occurs. *Collins* v. *Lyon, Inc.*, 181 Va. 230, 249, 24 S. E. 2d 572, 581; *Thomas* v. *Bryant*, 185 Va. 845, 856, 857, 40 S. E. 2d 487, 492, 169 A. L. R. 257; 41 Am. Jur., Perpetuities, etc., § 23, pp. 67, 68.

It follows from what has been said that there was no merit in the owners' objections to the instruction to the commissioners based upon the interpretation of the deed.

Accordingly, the order appealed from is

*Affirmed.*