## CIRCUIT COURT OF SHENANDOAH COUNTY

Mary P. Collins,
Administratrix, c.t.a.,
of the Estate of
Margaret W. Schuddeboom,
deceased

v.

Shenandoah County Council
of Weekday Religious Education et al.

April 29, 1998

Case No. (Chancery) 97-35

BY JUDGE JOHN J. MCGRATH, JR.

Margaret W. Schuddeboom, hereinafter referred to as "decedent," a resident of Shenandoah County, Virginia, died testate on August 28, 1996, and her Last Will and Testament dated August 28, 1997, was admitted to probate by the Clerk of the Circuit Court of Shenandoah County. In this will, the decedent made a number of small specific bequests of personal property and cash which are of no relevance to the decision in the pending lawsuit. In addition to these small specific bequests, the Last Will and Testament of decedent provided in Paragraph Fifth as follows: "I give and bequeath to Shenandoah County Council of Weekday Religious Education the sum of One Thousand Dollars ($1,000.00)." In addition, the residuary clause of the will contained in Paragraph Tenth stated as follows:

All the rest and residue of my estate I do give, devise, and bequeath to the Shenandoah County Council of Weekday Religious Education.

The instant suit was filed by the Administratrix of the estate on March 19, 1997, requesting the Court to provide instruction as to the appropriate disposal of the bequests contained in Paragraphs Fifth and Tenth. The reason such judicial intervention was required was the fact that the Shenandoah County Council of Weekday Religious Education (hereinafter SCCWRE) ceased to exist in or about 1993. The unrebutted evidence provided by Betty G. Edmonds, the ex-Treasurer of the Shenandoah County Council of Weekday Religious Education was that the organization was "cancelled" in or about 1993.

Process was issued in this case to the Shenandoah County Council of Weekday Religious Education and to the decedent's heirs at law, one of which appeared in this proceeding. The gravamen of the instant suit is the request of the Administratrix stating that:

> Your petitioner seeks the aid and direction of the Court in determining whether or not the legacies to the Shenandoah Council of Weekday Religious Education lapse and pass to the heirs at law of the decedent as intestate property or whether or not the common law *cy pres* doctrine or Virginia Code § 55-31 would apply, and if so, to what other charitable purpose the legacies should be given.

## I. *Factual Background*

Evidence was adduced at an *ore tenus* hearing from a former official with the SCCWRE. The evidence established that the SCCWRE was a religious/educational institution, which provided basic Christian Bible-based religious education to approximately 700 to 800 children who were enrolled in the lower and middle schools located throughout Shenandoah County. Although the record was not entirely clear on this matter, it appears that this education was generally provided by volunteer teachers who worked on behalf of and under the direction of SCCWRE and was provided in either school buses or other types of portable facilities which would periodically be located on or abutting public school property. The children who desired to participate in the religious educational program would be then given an opportunity to leave the school for the purposes of attending these voluntary religious educational sessions.

In or about 1990, the Shenandoah County School Board apparently ended the arrangements that had been in place with SCCWRE to provide voluntary Christian education in the vicinity of the public schools. With the cessation of

this arrangement, the purposes for SCCWRE ceased to exist and the organization was wound up in or about 1993. There is no evidence as to the exact legal structure of the SCCWRE, but it appears to be clear that no successor organization was founded or took over the functions being performed by the SCCWRE when the arrangements with the Shenandoah County schools ended. The statement filed by the former treasurer of the organization indicates that the Shenandoah organization no longer exists but that similar organizations continue to operate in the counties of Frederick and Rockingham. (*See* Plaintiff's Exhibit No. 2.)

At the hearing, testimony was provided by two individuals who represent religious organizations which continue to function in Shenandoah County and who believe that they should receive all or a portion of the bequest to the SCCWRE under the *cy pres* or some similar legal doctrine.

One organization is a group called the Christian Leadership Ministries, Inc. (hereinafter referred to as CLMI), which was founded in 1995 and is headed by Ms. Rebecca Keller-Murray, who had been a volunteer teacher with the SCCWRE before it went out of existence. As stated at the hearing, the CLMI is an organization which was founded for the "purpose of meeting the needs of teens in Shenandoah County." (*See* Exhibit 1.) This organization's declared purpose is also to serve the "spiritual, emotional, and physical needs of these young people." In addition to certain Bible study sessions, which are held on a weekly basis involving fifty to sixty teenagers, the organization also engages in a number of community service projects such as cleaning parks and playgrounds, picking up trash at the area schools, and helping the elderly in the area.

The CLMI also organizes the teenagers who are participating in its programs to collect food and clothing for needy families. In addition the CLMI also conducts community service programs involving teens who are required by various judicial orders to complete a certain amount of community service. In its mission statement, the CLMI states that it is organized as an "outreach to the youth of Shenandoah County working with high school and middle school students."

Although the Bible study classes that are conducted on Wednesday evening are attended by forty to sixty students, Ms. Keller-Murray indicates that on an ongoing basis, there are probably somewhere in the neighborhood of two hundred teenagers in Shenandoah County who, in one way or another, have been or are involved in the programs conducted by the CLMI.

A second organization which appeared at the hearing is entitled Youth for Christ/Shenandoah, Inc. (hereinafter referred to as YFC/Shenandoah). The

YFC/Shenandoah is a chartered affiliate of an organization known as Youth for Christ/USA, which, in turn, is a charter member of a worldwide movement known as Youth for Christ/International. The constitution of the YFC/Shenandoah provides that the objectives of the organization are as follows:

> *Section A.* The mission of YFC/Shenandoah is to communicate the life-changing message of Jesus Christ to every young person.
> *Section B.* The purpose of YFC/Shenandoah is to participate in the body of Christ in the responsible evangelism of youth, presenting them with the person, work, and teachings of Jesus Christ, discipling them, and leading them into the local church.
> *Section C.* The strategy of YFC/Shenandoah is to mobilize the Christian community to reach lost youth wherever they are and by all possible means.
> *Section D.* The program of YFC/Shenandoah includes the development of Campus Life for senior high youth and Campus Life/JV for junior high students. The program will follow the guidelines and standards of Youth for Christ/USA.
> *Section E.* The contribution of YFC/Shenandoah to the community includes organizing special area-wide events and activities which are in keeping with its objectives and in harmony with its non-denominational character, serving local churches by helping train personnel and sharing youth ministry resources, and cooperating with civic and other organizations which have pledged themselves to foster high moral and ethical standards of living.

(*See* Plaintiff's Exhibit 3.)

Testimony at the hearing from Mr. Stephan Schaeffer, who is the chairperson of YFC/Shenandoah, indicates that the organization has a number of firm plans in place to conduct outreach programs and to provide youth and teenagers of Shenandoah County with a framework within which they can engage in volunteer activities that will benefit the community and participate in a number of community service programs. In addition, the organization, as set forth in its charter, seeks to convey a Christian message to the youth and to encourage them to follow the general dictates of the Christian church and to participate in a church of their own choosing.

In examining the evidence introduced at the hearing, it appears that both the CLMI and the YFC/Shenandoah are religious based organizations which serve the Shenandoah County community and are Christian-oriented organizations which are designed to proselytize the Christian religion to the

youth and teenagers located in the county, provide some education in the form of Bible study, provide counseling and moral direction to the youth, and to involve them in extensive forms of community service and outreach programs. Although the exact method of delivering these services varies to some extent between the two organizations, it appears that they both seek to fulfill the same function in the Shenandoah County community.

## II. *Legal Analysis*

As noted above, the Bill of Complaint in this action requested direction from the Court as to whether or not the common law *cy pres* doctrine or Virginia Code § 55-31 (statutory *cy pres*) would apply to this case, and if so, to what other charitable purposes the legacy should be given. Although not mentioned in the pleadings, this Court is of the view that in addition to common law *cy pres* and statutory *cy pres*, an additional doctrine that must be considered in resolving the instant request for directions by the Administratrix is the legal doctrine of equitable approximation. These three doctrines will be discussed in the analysis that follows.

### A. *The Common Law Cy Pres Doctrine*

After the Virginia Supreme Court's decisions in *Thomas v. Bryant*, 185 Va. 845 (1946), and *Massanetta Springs Summer Bible Conference Encampment v. Keezell*, 161 Va. 532 (1933), it appeared that Virginia as one of the original colonies did not accept the principle that the *cy pres* power existed as a matter of common law. As the Supreme Court stated in *Massanetta Springs, supra,* at page 542:

That such indefiniteness of purpose is a fatal defect in America cannot be doubted, as the prerogative *cy pres* doctrine has no application on this side of the Atlantic. Since American tribunals are not clothed with the prerogative of the Crown but are invested only with judicial authority, the English doctrine of charitable trusts is not in force in America so far as gifts are concerned whose purposes are so indefinite that they cannot be executed by the courts.

Over the years, there has been some intimations that the common law doctrine of *cy pres* may be applicable in Virginia, but as late as 1965, Judge Winter, writing as a member of a penal of the United States Court of Appeals for the Fourth Circuit, very eloquently summarized the state of the law

regarding common law *cy pres* in the Commonwealth of Virginia in the case of *Smith v. Moore*, 343 F.2d 594 (4th Cir. 1965). After a detailed analysis of the case law, he concluded as follows:

> The common law of Virginia relating to *cy pres*, perhaps by reason of Virginia's having been one of the original states and thus having its law enunciated under the influence of Chief Justice Marshall, is in the mainstream of the confusion, contradiction and equivocation attaching to the history of the doctrine of *cy pres* in America. That history has been exhaustively discussed in cases, treatises and periodicals, and it will not be recapitulated in detail in this opinion. It is sufficient to say that the Virginia courts following the opinion of Chief Justice Marshall in the celebrated Philadelphia Baptist Association case to the effect that the power of *cy pres* was not a part of the inherent power of equity, but could exist solely by virtue of statute. Virginia adhered to this view despite the subsequent overturning of the Philadelphia Baptist Association case by the decision in *Vidal v. Girard's Executors.* For a brief interval, Virginia may have repudiated its earlier position but the principle of the Philadelphia Baptist Association case is apparently still the case law of Virginia despite local speculation to the contrary.

*Id.* at 599-600.

Although the Supreme Court of Virginia has recently been requested to address the question of whether or not the common law doctrine of *cy pres* exists in Virginia, it has declined to rule on that issue. See *Baliles, Attorney General v. Miller,* 231 Va. 48 (1986).

This Court has not been able to find any persuasive precedent indicating that the Virginia courts would now accept the common law doctrine of *cy pres*; therefore, this Court holds that the common law doctrine of *cy pres* is not applicable in the Commonwealth of Virginia and cannot be utilized to grant the Administratrix instructions in this proceeding.

### B. *Statutory Cy Pres*

The Virginia legislature, apparently anticipating a ruling in *Thomas v. Bryant*, 185 Va. 845 (1946), that the common law doctrine of *cy pres* was not applicable to courts in chancery in the Commonwealth of Virginia, enacted what is now codified as § 55-31 of the Code of Virginia, 1950, as amended. This statute is commonly known as the Virginia statutory *cy pres* doctrine, and it reads in pertinent part as follows:

> § 55-31. *Indefiniteness not to defeat certain trusts.* When any corporation, firm, association, partnership or person gives, bequeaths, grants, conveys or devises any real or personal property in trust to or for any educational, charitable or eleemosynary purpose, the indefiniteness or uncertainty of the beneficiaries named in any instrument creating such a gift, bequest, grant, conveyance or devise, or the indefiniteness of the purpose of the trust itself, shall not defeat any such trust and, if the trust is in other respects valid under the laws of this Commonwealth, it shall be administered to conform as near as may be to the purpose for which created or, if impossible of performance for this purpose, for some other education, charitable, benevolent or eleemosynary purpose … . [T]he determination of the purpose of the trust shall be made by a court of equity in the county or city wherein the property or the greater part thereof is located and the administration of the trust shall be under the direction of such court.

The language of § 55-31 is explicit in that the doctrine of statutory *cy pres* only applies to "trusts," which are established for educational, charitable, or eleemosynary purposes. In the instant proceeding, the testamentary document which has been admitted to probate contains no explicit trust language. The bequests to SCCWRE are definitive and contain no language which would, on its face, imply the Testatrix's desire that a trust be created. The bequests are not for the benefit of Weekday Religious Education, nor does the bequest contain any intimation that the money is to be held in trust for any particular charitable educational, religious, or eleemosynary purpose. The bequests are simply outright devises to the SCCWRE.

Therefore, on its face, the bequests contained in the will that is the subject matter of this litigation do not fit within the four corners of the doctrine of statutory *cy pres* as set forth in § 55-31 of the Code of Virginia. In most cases in which the doctrine of statutory *cy pres* has been applied, there has been some language in the conveying instrument stating, suggesting, or implying that the funds are being given in trust, albeit an implied trust, for the benefit of a charitable institution or purpose. *See, e.g., Owens v. Bank of Glade Spring,* 195 Va. 1138 (1954) (dispositive language in will was "the balance of my estate, bonds, notes, and real estate to go to the Glade Spring Baptist Church and Parents Teachers Association share equally. The Parents Teachers amount to go to building a recreation home on vacant lot adjoining my old home place. The Baptist Church share to be placed in a trust fund and only

the interest used.") Some courts, however, relying upon the generally strong principle that charitable gifts are to be favored under the law and that there is a broad presumption that a person dying leaving a will intended to not leave any property to descend by intestacy, have applied the statutory doctrine of *cy pres* even when there is no express trust language contained in the document. *See Kesler v. Dillon*, 16 Va. Cir. 276 (1989) (City of Roanoke) (statutory *cy pres* utilized when will left all the residuary estate "to Zion Lutheran Church, Floyd, Virginia, and Zion Lutheran Cemetery in equal shares with a provision that if Zion Lutheran Church built in a location other than its present site, then the share of the Zion Lutheran Church would go to the Zion Lutheran Cemetery.")

This Court is well aware of the presumptions against a person dying intestate when they leave a will and the strong preference under the law for charitable, educational, and eleemosynary bequests. *See, e.g., Arnold v. Groobley*, 195 Va. 214 (1953); *Thomas v. Bryant*, 185 Va. 845 (1946); *Kesler v. Dillon*, 16 Va. Cir. 276 (Roanoke City 1989). The Court is further aware of the ability of a Court to discern an implied trust for charitable purposes when it appears appropriate to do so. *See, e.g., Wellford v. Powell*, 197 Va. 685 (1956).

However, in reviewing the clear mandate of § 55-31 of the Code of Virginia and the fact that there is no language in the will that in any manner, shape, or form suggests that the bequest to the SCCWRE was to be in the nature of a trust, whether implied, constructive, explicit, or otherwise, the Court is of the view that although the application of the statutory *cy pres* doctrine may well result in a very salutary effect in this case, the doctrine is not available here because this dispositive instrument gives no rise, explicit or otherwise, to the suggestion that the funds were left in trust. Therefore, the Court holds that the statutory *cy pres* power cannot be utilized to change the clear statement of the Testatrix's dispositive scheme.

## C. *Equitable Approximation*

The doctrine of equitable approximation is a common law doctrine which has existed alongside and to some extent has become coterminous with the doctrine of *cy pres*. In its initial manifestations, the doctrine of equitable approximation was held to be an analog to the British doctrine of *cy pres* for the purposes of having or rehabilitating charitable or educational "trusts." *See, e.g., Campbell v. Board of Trustees of the James Berry Robinson Home for Boys*, 220 Va. 516 (1979); *Smith v. Moore*, 343 F.2d 594 (4th Cir. 1965). In the last cited case, Judge Winter reviewed the applicable Virginia decisional

authority and summarized the interrelationship of *cy pres* and equitable approximation as follows:

> In a jurisdiction in which the doctrine of *cy pres* is fully recognized, courts often perform saving operations under its umbrella, but all of the results which have been described have also been accomplished without resort to *cy pres*. While equitable approximation is applicable to both private and charitable trusts, modern authorities suggest that the doctrine of equitable approximation is more extensive with respect to charitable trusts than to private trusts. This is not to say that the doctrine of equitable approximation is completely co-extensive with the doctrine of *cy pres*. However, the conclusion seems inescapable that in jurisdictions where the courts have rejected the doctrine of *cy pres*, they have been more liberal in application of the doctrine of equitable approximation to save charitable trusts, so that the scope of the two doctrines has tended to merge. Indeed, the authorities are replete with references to the two doctrines in the alternative, such as that of "*cy pres* or equitable approximation" in instances where deviations from the strict terms of a charitable trust have been authorized, as if both terms described the same judicial power. [Footnotes omitted.]

Although equitable approximation was originally confined to and applied only in cases involving charitable or educational trusts, recent decisional authority has indicated that courts in the Commonwealth are willing to extend the doctrine of equitable approximation beyond the strict contours of statutory *cy pres* by applying the doctrine in cases where a trust is not involved. For example, in the recent case of *Stoller v. Andrews*, 42 Va. Cir. 310 (Roanoke City 1997), Judge Weckstein, in a very well-reasoned opinion, utilized the doctrine of equitable approximation to reform the distributive scheme of a testamentary disposition which did not contain a trust nor were the testamentary dispositions for charitable purposes. As noted by Judge Weckstein, the doctrine of equitable approximation is a necessary power in order to give full effect to the obvious dispositive intent of the testator.

This Court concludes in the present case, that in order to give full recognition to the strong presumption that a testator did not intend to leave his or her property to devolve by the laws of intestacy and also the strong preference in the Commonwealth to honor charitable gifts, that the doctrine of equitable approximation is available to reform and give guidance to a

testator's charitable intent even when such intent is not expressly stated in terms of a trust.

It is clear from the will that has been admitted to probate in this case that Ms. Schuddeboom intended that her specific bequest and the bequest of her residuary estate to the SCCWRE was an intent to make a gift to a religious and educational institution, and the fulfillment of that explicit testamentary direction is frustrated by the fact that the specific organization identified had ceased to exist by the time of her death. This Court, therefore, concludes that it has the authority under the doctrine of equitable approximation to direct the disposition of her residuary estate consistent with her expressed wishes contained in the bequest to the SCCWRE so as to bring to fruition her desire to benefit an organization or organizations which provide for religious weekday education for children in lower and middle schools located in the Shenandoah County area. The question then becomes whether the Court can order distribution of the funds to the two organizations which have been put forward by the Administratrix as possible beneficiaries.

### III. *Application of the Doctrine of Equitable Approximation in the Instant Case*

A review of the record established in this case shows that the SCCWRE was apparently an institution which provided in an educational context religious education based on the Christian faith for lower and middle school students being educated in the public schools of Shenandoah County. The record indicates that at its height, the SCCWRE was providing such education to approximately seven to eight hundred primary and middle school students attending the Shenandoah County public schools. There is no indication in the record that the SCCWRE was involved in providing community service programs or voluntary programs in the community as a whole. Nor does there appear to be any indication in the record that the SCCWRE was in any way organized or had as its primary or secondary function the providing of counseling or community service-oriented functions for teenagers who were experiencing difficulty with the legal system or in similar contexts.

On the other hand, it appears quite clear that, although the CLMI and the YFC/Shenandoah do contain the kernels of an educational program (*e.g.*, Bible study meetings), their primary focus appears to be a program of community involvement which involves bringing the religious message of the Bible to the youth of Shenandoah County but with an emphasis upon teenagers and with a further emphasis upon assisting teenagers in developing

the moral guidance and principles to carry them through their young adulthood. Although the programs both concentrate on what are clearly worthwhile and commendable objectives, it is something of a stretch of the doctrine of equitable approximation to hold that these organizations are identical to or even nearly identical to the programs run by the SCCWRE. The simple fact of the matter is that when analyzed in light of the clearly-defined purposes of the SCCWRE, the two organizations which have been proffered as alternate donees, the CLMI and the YFC/Shenandoah, are not identical to or nearly identical to the SCCWRE.

However, given the strong preference for the upholding of charitable gifts and the strong presumption against intestacy, the Court is loath to permit a lapse in these charitable bequests. Therefore, the Court finds that in the absence of any charitable organization which more closely approximates the goals of the SCCWRE, the doctrine of equitable approximation can be stretched far enough to cover the two proposed charitable donees which have been put forth. In the absence of a more appropriate charitable donee's petitioning the Court, the Administratrix is directed that thirty days from the date of this Order, that she is to divide the bequests contained in Paragraphs Fifth and Tenth equally between Christian Leadership Ministries, Inc., and Youth for Christ/Shenandoah.